ABBEVILLE ELECTRIC LIGHT AND POWER CO. v. WESTERN
ELECTRICAL SUPPLY CO.

SERVICE OF SUMMONS—FOREIGN CORPORATION—AGENT—JURISDICTION—
TRAVELING SALESMAN.—Personal service within the State of a
summons and complaint, alleging a cause of action arising within
this State, on the traveling salesman of a foreign corporation not
having a resident agent, a place of business or property within the
State, who visits this State in relation to the transaction (sale of
machinery) out of which the suit arose, is a good service on the
foreign corporation under "any agent," Code, 155, and gives State
Court jurisdiction of such foreign corporation. *Tillinghast* v. *Boston &c. Lumber Co.,* 39 S. C., 484; *Penneyor* v. *Neff,* 95 U. S., 414;
*St. Clair* v. *Cox,* 106 U. S., 350; *Goldey* v. *Morning News,* 156 U.
S., 518; and *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S., 727, *distinguished from this.*

Before BENET, J., Abbeville, February, 1901.    Reversed.

Action for damages by Abbeville Electric Light and
Power Co. against Western Electrical Supply Co.    Upon
motion to set aside the service of summons, the following
showing was made:

The defendant offered the following affidavit in support
of its motion, viz:

"Now comes the Western Electrical Supply Company,
defendant herein, and states that George F. Schminke, the
person upon whom service of summons was had herein, at
the time of said service was not an officer of this defendant,
nor a director thereof; that he was simply and solely the
traveling salesman for this defendant; that his duties and
powers with this defendant were simply and solely to take
orders for the sale of merchandise, subject to the approval
of this defendant, in such States as he might be directed by
this defendant from time to time.    That he had no other
powers or duties than these.    That he was a resident of the
city of New Orleans, State of Louisiana.    That this defendant has no office or place of business in the State of South
Carolina.    That said George F. Schminke was especially

sent to the town of Abbeville at the time of said service to examine into the running of the machinery in controversy and report the facts to defendant, and that he was so sent at the request of plaintiff.    That the contract between plaintiff and defendant out of which the alleged cause of action arose, if plaintiff has any cause of action, was not made in the State of South Carolina.    Western Electrical Supply Co., per R. V. Scudder, Gen'l Mgr.

"State of Missouri, city of St. Louis.    R. V. Scudder, being duly sworn, on his oath, states that he is and was at the time hereinbefore mentioned general manager of the Western Electrical Supply Co., defendant herein, and that the statements contained in the foregoing are true.    R. V. Scudder.    Subscribed and sworn to before me, this 27th day of November, 1900, in the city of St. Louis, Mo.    J. B. Carroll, Notary Public.    (Official seal.)"

The plaintiff offered the following affidavit and card and letters in rebuttal, viz:

"Personally appeared before me, W. N. Thompson, who being duly sworn, says: That he is the president of the above named plaintiff.    That the letters hereto attached were received from the defendant in due course of mail, and letters, copies of which are hereto attached, sent defendant. That the card hereto attached was handed deponent by Mr. George F. Schminke when he came to Abbeville, representing the defendant in negotiations looking to the settlement of the differences between the plaintiff and the defendant, which resulted in the suit now pending in this Court.    W. N. Thompson.    Sworn and subscribed before me, this February 21st, 1901.    J. L. Perrin, C. C. C. P."

The following is the card referred to in the above affidavit: "George F. Schminke, Western Electrical Supply Company, Electrical Supplies, St. Louis."

The following are the letters and copies of letters in their

regular order, referred to and attached to the affidavit of W. N. Thompson, viz:

"St. Louis, October 23d, 1900.    Abbeville Electric Light and Power Co., Abbeville, S. C.   Gentlemen: Referring to your favor of October 6th, which has been held for the writer's return to the city, we notice fully what you have to say; and as there is such a marked difference between your report and the factory's report, and as we are put in the position of middleman, as sort of a bumper between you and the factory, you can readily appreciate our position, and we will defer writing you at any great length, excepting to say that if your position is correct, you shall certainly be treated right.   We have written our Mr. George F. Schminke, who will be in Abbeville now in about ten days, and we will get a full report from him, and we have also written the factory fully regarding the matter and enclosed them a copy of your letter, and we are satisfied that it will be news to them, and we will advise you as soon as we hear from them, and we have requested them to write us by return mail fully regarding the matter, and we assure you that if your position is correct in this matter and the machine is defective, that we will replace it with a machine that will perform in accordance with the contract.   We trust you will bear with us until we can get a full and definite report from the factory and a reply to our letter to them to-day enclosing a copy of your letter under answer.   (Signed by defendant.)"

The following is the letter of plaintiff in reply to the above:

"Abbeville, S. C., October 27th, 1900.   Gentlemen: In reply to your favor of the 23d inst., we note what you say, and would say that we are taking steps to buy a new machine at once, for we cannot afford to be delayed any longer in this matter.   Now, in consideration of what you say in your last about sending your Mr. Schminke to Abbeville by the 3d proximo, we will defer buying the machine above referred to until the 5th proximo, provided you write us at once that your authorized representative will be in Abbeville by the

above date with power to act, so that we may be assured of a speedy settlement. (Signed by the plaintiff.)"

The letter in reply to letter of plaintiff follows:

"St. Louis, October 29, 1900. Abbeville El. Lt. and Power Co., Abbeville, S. C. Gentlemen: Your favor of the 27th inst. to hand, and this is simply to acknowledge receipt of your letter and to let you know that we are following the matter up. Before answering your letter we are waiting to have a reply to a telegram we have sent to our Mr. Geo. F. Schminke to-day, asking him to wire us when he would arrive in Abbeville, and also asking him to advise us by wire where a letter would reach him, as we want to write him fully regarding the situation at Abbeville, and upon receipt of his reply advising us when he will be able to reach Abbeville we will answer your letter fully. We have no doubt, however, that he will be able to get into Abbeville not later than November 5th, and we think it will be very foolish of you to replace the Warren machine with a machine of another make, if you intend trying to operate the other machine under the same conditions as the Warren, and we are very sure that if you will improve the conditions under which you are trying to operate this Warren machine and have your Warren machine fixed up, that you will have no trouble with it. We are very sure that under the conditions you are trying to operate, you cannot get any machine to give you satisfaction, and we doubt if any machine would have stood the racket as long as the Warren machine has. Mr. Schminke is a very competent man and capable of passing on a thing of this kind, and can advise you in a very few moments whether or not the conditions under which you are operating are unfavorable, and we trust that you will defer action on this matter until you give us an opportunity to look over the ground for ourselves, which we will do when our Mr. Schminke arrives in Abbeville. We will defer writing further until hearing from Mr. Schminke and will notify you as soon as we have his telegram. (Signed by the defendant.)"

The next letter is dated St. Louis, October 30, 1900, addressed to the plaintiff, and is as follows:

"Gentlemen: Referring to your favor of October 4th, in which you enclosed your bill of October 1st against us, amounting to $32.60, we return you herewith the invoice, and will thank you to kindly hold this with the balance of the papers until final adjustment is made on the account in accordance with the agreement; and when final adjustment is made of the account, if you are entitled to credit for these items, you shall certainly receive them, but we would prefer not dividing the thing up and making an entry now and another entry at the final adjustment, but will simply make one bite of the cherry. Please attach this letter and your bill to the other papers pertaining to this settlement, and keep all of the papers together so that we can have them at the proper time. This letter was in a basket on the writer's desk during his absence in the East, and in cleaning up the basket to-day he found the letter, and he thinks this will be the best way to dispose of the matter temporarily. We have not yet received a telegram from our Mr. Schminke in reply to ours of yesterday asking him when he would reach Abbeville, but we have received a letter which indicates that he will be in Asheville, N. C., to-morrow, at which time we expect to receive an answer to our telegram, and we will then notify you just when you can expect Mr. Schminke in Abbeville. (Signed by the defendant.) Postscript: We are sending Mr. Schminke some letters in your care, which we will thank you to kindly deliver to him when he reaches Abbeville."

The next letter is dated St. Louis, November 1, 1900, addressed to the plaintiff, and is as follows:

"Gentlemen: Our Mr. G. F. Schminke will be in Abbeville on the 5th inst., and we are writing him fully to-day regarding the situation there. (Signed by the defendant.)"

From order granting the motion, the plaintiff appeals.

*Mr. Wm. N. Graydon,* for appellant, cites: *What is an*

*agent?* 1 Ency., 1st ed., 333, 347. *Where did cause of action arise?* 39 S. C., 484. *How can service of the summons be made here?* Code, 423, 155; 23 Stat., 42; 48 S. C., 71; 32 S. C., 319; 53 S. C., 106; 22 Ency., 129, 136; 99 N. Y., 679.

*Mr. Frank B. Gary,* contra, cites: *The agency of Schminke is a matter of fact, and this Court cannot review the finding of fact thereon by Circuit Judge:* 48 S. C., 73. *State Court can only acquire jurisdiction of non-resident by (1) voluntary appearance, or (2) personal service within limits of the State:* 39 S. C., 496; 41 S. C., 22; 40 S. C., 520; 44 S. C., 211; 48 S. C., 493; 50 S. C., 113; 95 U. S., 714. *Domicile of a corporation is where it is created, and service elsewhere only effects its property there located:* 106 U. S., 224; 59 U. S., 452; 8 Wall., 181. *Defendant has not become domesticated, as required in Rev. Stat., 1466, for purposes of jurisdiction here:* 49 U. S., 452. *Service on Schminke cannot bind the defendant:* 39 S. C., 484; 95 U. S., 714; 13 Ency., 893; 41 S. C., 27; 19 Ency. P. & P., 665, 676; 2 McArthur, 146; 16 Phila., 112; 141 Pa., 462; 106 U. S., 350; 54 Fed. R., 420; 11 Fed. R., 529; 113 U. S., 727; 47 Fed. R., 593; 22 Am. St. R., 433; 9 Pa. Sup. St. Rep., 220.

August 5, 1901. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The action in this case was commenced by the service of summons, with a copy of the complaint attached thereto, upon one George F. Schminke, at Abbeville C. H., on the 7th day of November, 1900, by the sheriff of Abbeville County, under the claim that the said Schminke was an agent of the defendant company, a corporation duly chartered under the laws of the State of Missouri. In the complaint it is alleged that "the cause of action set forth herein arose in this State," and the other allegations set forth as the cause of action is the

breach of a contract whereby the defendant company guaranteed that a certain electric machine for the purpose of generating electricity, known as a 45 K. W. Warren Alternater, sold by defendant to plaintiff in December, 1899, was free from any and all inherent electrical or mechanical defects. Before the time for answering expired, to wit: on the 26th of November, 1899, the defendant, by his attorney, gave notice of a motion to set aside the service of the summons, "on the ground that the party served with the summons and complaint herein, on the 7th day of November, 1900, was not an agent of the defendant"—expressly stating in this notice that "defendant will appear for the purpose of objecting to the jurisdiction of this Court, and for no other purpose."

This motion was heard by his Honor, Judge Benet, upon the affidavits and letters and card thereto attached, which are set out in the "Case" (which will be incorporated in the report of this case by the Reporter), who, in a short order, granted the motion to set aside the service of the summons, and dismissing the case for want of jurisdiction. The only reason given by the Judge is thus expressed in his order: "After argument of counsel on both sides, I hold that defendant, non-resident corporation, could not be brought within the jurisdiction of this Court by service of the summons upon the said George F. Schminke, he not being, in my opinion, an agent in the sense in which 'any agent,' is used in the Code." The provision of the Code here referred to may be found in the second paragraph of sec. 155, where, after prescribing the manner in which a corporation shall be served with a summons, originally proceeded as follows: "Such service can be made in respect to a foreign corporation only when it has property within the State, or the cause of action arose therein, or where such service shall be made in this State personally upon the president, cashier, treasurer, attorney or secretary, or any resident agent thereof." But by the act, approved 2d March, 1899, 23 Stat., 42, that provision of the Code was amended by striking out the word

"resident" in the last line of the above quotation; so that, as the law now reads, and as it read at the time this action was commenced, a foreign corporation could be made a party to an action by serving personally *any* agent of such foreign corporation within the limits of this State. If, therefore, we look alone to the express language used in the Code, especially bearing in mind the fact that the legislature had, in express terms, seen fit to strike out, by the act of 1899, *supra,* the word "resident"—the only word qualifying the word "agent," leaving the broad terms *"any* agent," without any qualification whatsoever—it is clear that the Circuit Judge erred in holding, practically, that the word "agent" must be qualified in some way, though he does not specify in what way. In addition to this, it will be observed that the notice of the motion expressly states that it was based "on the ground that the party served with the summons and complaint herein on the 7th day of November, 1900, was not an agent of the defendant," and that ground was not only not sustained by any evidence offered in the "Case," but on the contrary was in terms negatived by the defendant's own showing; for in the affidavit of Scudder, the general manager of the defendant, he only says that Schminke "at the time of said service, was not an *officer* of this defendant, nor a *director* thereof;" but he does not say that he was not an *agent* of defendant company; but he does say, not expressly, it is true, but by necessary implication, that he was an agent; for he says: "that he was simply and solely the traveling salesman for this defendant"—going on to state to what extent his powers and duties were limited; and this necessarily implies that he was an agent of the defendant. Nor was there any finding of fact by the Circuit Judge that Schminke was not the agent of the defendant. On the contrary, the language used by him necessarily implies that while he thought that Schminke was, in one sense, the agent of the defendant company, yet, in his opinion, he was not an agent, "in the sense in which 'any agent' is used in the Code." It is clear, therefore, that if the only ground upon

which the motion was based was not sustained, there was error in granting the motion.

It is earnestly and with force contended by the counsel for the respondent that the provisions of the Code above referred to should not be literally construed, and that, on the contrary, with a view to avoid a conflict with well settled principles established by the decisions of the Supreme Court of the United States—the tribunal invested with authority to determine finally controversies between citizens of different States of the Union, the provisions of our Code should be given a liberal construction, as was done in the case of *Tillinghast* v. *Boston & Port Royal Lumber Company,* and *Moore* v. *S. C. Forsaith Machine Company,* 39 S. C., 484; but as the action was dismissed as to the Boston &c. Company upon the ground that the complaint did not state facts sufficient to constitute a cause of action against that company, from which there was no appeal, the case was considered as an action against the S. C. Forsaith Machine Company alone.    See p. 488.    One of the questions, in fact, the only real question in the case, was whether the State Court had acquired jurisdiction of the said machine company, a foreign corporation, chartered by the laws of the State of New Hampshire, by the service of the summons upon that company at their place of business in the city of Manchester, in the State of New Hampshire, after an order of publication had been obtained—the said company having no property within the limits of this State, and no place of business, and no agent in this State.    This Court held that while it was true that the terms of our Code did seem to justify a service upon a foreign corporation outside of the limits of this State after an order of publication had been obtained even in an action. *in personam,* yet in view of the fact that the Supreme Court of the United States had taken a different view, in the case of *Pennoyer* v. *Neff,* 95 U. S., 714, and other cases following that case, which were cited in Tillinghast *v.* Boston Company, it would be necessary to give to our Code such a construction as would avoid a con-

24—61

flict with these decisions of the Supreme Court of the United States, and accordingly those provisions of our Code, there considered, were so construed as applying only to proceeding *in rem,* and not to actions *in personam.* It will be observed that the Court in Tillinghast *v.* Boston Company, was called upon to construe a different section of the Code, containing different language from that which it is now called upon to consider. In the former case, the question was as to the construction of the following language in sec. 156 of the Code, in which the manifest purpose was to provide for service *by publication,* to wit: that certain officers "May grant an order that the service be made by publication of the summons in either of the following cases: 1. Where the defendant is a foreign corporation, has property within the State, or the cause of action arose therein," and after mentioning other cases in which service by publication may be made, and after prescribing how such publication is to be made, and that in such cases the officer making the order shall require a copy of the summons to be forthwith deposited in the postoffice, directed to the person to be served at his place of residence, &c., the following language is used: "Where publication is ordered, personal service of the summons, *out of the State,* is equivalent to publication and deposit in the postoffice" (italics ours). But in this case the Court is called upon to construe—not sec. 156 of the Code, nor any language contained therein—but sec. 155, as amended by the act of 1899, *supra,* which after prescribing, in the first paragraph of the 1st subdivision of the section, how a corporation may be served with the summons, in the second paragraph of that subdivision uses the following language: "Such service can be made in respect to a foreign corporation only when it has property within the State, or the cause of action arose therein, or where such service shall be made, in this State, personally, upon the president, cashier, treasurer, attorney or secretary, or any agent thereof." So that in the former case the question was as to the validity of the service of the summons upon a foreign

corporation *outside of the limits of this State,* while here the question is as to the validity of the service made *within the limits of this State,* and the difference is obvious and very important. We do not think, therefore, that the case of Tillinghast *v.* Boston &c. Company, *supra,* or any of the decisions following that case, have any application to the question presented in this case.

It was also contended by counsel for respondent that the defendant company not having complied with the provisions of sec. 1466 of the Rev. Stat. of 1893, has not waived its exemption from suit in the Courts of this State, or consented to be subjected to the jurisdiction of our Courts. In the first place, it must be remembered that the provisions of that section, as well as other sections contained in the same chapter of the Rev. Stat., have been amended by the act of 1897, 22 Stat., 484, and various other conditions have been added, one of which is, "that it shall be taken and deemed to be the fact, irrebutable, and part and parcel of all contracts entered into between such corporation [foreign] and a citizen or corporation of this State, that the taking or receiving from any citizen or corporation of this State of any charge, fee, payment, toll, impost, premium, or other moneyed or valuable consideration, under or in performance of any such contract, or of any condition of the same, shall constitute the doing of its corporate business within this State, and that the place of the making and of the performance of such contract shall be deemed and held to be within this State, anything contained in such contract or in any rules or by-laws of such corporation to the contrary notwithstanding." Now if the defendant company has received any payment or other moneyed or valuable consideration under or in performance of the contract, admittedly made between the parties, as may be reasonably and as we think must be inferred, then under the statutory provision just quoted, it must be regarded as an irrebutable fact that the defendant company was doing business within this State, and the place of the making and of performance of such contract shall be deemed

and held to be within this State, notwithstanding anything to the contrary in the contract, or the rules and by-laws of the foreign corporation.  Under this view the case must be regarded as a case in which a domestic corporation, having, as it supposed, a claim against a foreign corporation, doing business in this State, arising out of a contract made and to be performed in this State, has undertaken to commence its action against such foreign corporation by serving, personally, within the limits of this State, an agent of such foreign corporation, with a copy of the summons; and in such a case we do not think that any authority has been or can be cited, which holds that the State Court had not thereby acquired jurisdiction of the foreign corporation.

But assuming that we are in error in regarding this case as such a case as that just mentioned, and, on the contrary, that it is a case in which the plaintiff, a domestic corporation, has brought an action, under a contract which was not made in this State and was not to be performed here, against the defendant, a foreign corporation, and has undertaken to obtain jurisdiction of such foreign corporation, by the personal service of its agent within the *limits of this State;* we will proceed to inquire whether, under the admitted facts in this case, such service would be recognized as good and valid, under the decisions of the Supreme Court of the United States, as we freely recognize the superior authority of such decisions in controversies between citizens of different States.

The first case cited by respondent's counsel is the case of *The Lafayette Ins. Co.* v. *French,* 18 How., 404.  That was a case in which the question was as to the validity of a judgment recovered against the plaintiff in error, a foreign corporation, in a State Court of Ohio, in an action commenced by service of process upon an agent of said plaintiff in error, within the limits of the State of Ohio; and the question turned upon the inquiry whether the State Court of Ohio had, by such service, obtained jurisdiction of the said insurance company, the objection to such service being that a

State Court could not obtain jurisdiction of a foreign corporation created by the laws of another State. As is stated by Mr. Justice Curtis, in delivering the opinion of the Court: "The precise facts upon which this objection depends are that this corporation was created by a law of the State of Indiana, and had its principal office for business within that State. It had also an agent authorized to contract for insurance, who resided in the State of Ohio. The contract on which the judgment in question was recovered was made in Ohio, and was to be there performed; because it was a contract with the citizens of Ohio to insure property within that State. A statute of Ohio makes special provision for suits against foreign corporations, founded on contracts of insurance there made by them with citizens of that State; and one of its provisions is, that service of process on such resident agent of the foreign corporation shall be as 'effectual as though the same were served on the principal.' " In discussing the law applicable to this state of facts, the learned Justice uses the following language: "The inquiry is not whether the defendant was, personally, within the State, but whether he, or some one authorized to act for him in reference to the suit, had notice and appeared, or if he did not appear, whether he was bound to appear or suffer judgment by default. And the true question in this case is, whether this corporation had such notice of the suit, and was so far subject to the jurisdiction and laws of Ohio, that it was bound to appear, or take the consequences of non-appearance." Then, after laying down the general proposition that a corporation created by one State can only transact business in another State by the consent, express or implied, of the latter State; and that such consent may be accompanied by such conditions as the latter State may see fit to impose, provided such conditions are not repugnant to the Constitution or laws of the United States, "or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment by all others, or that principle of natural justice which forbids condemna-

tion without opportunity for defense"—the opinion proceeds as follows: "In this instance, one of the conditions imposed by Ohio was, in effect, that the agent who should reside in Ohio, and enter into contracts of insurance there in behalf of the foreign corporation, should also be deemed its agent to receive service of process in suits founded on such contracts. We find nothing in this provision either unreasonable in itself or in conflict with any principle of public law." Accordingly, it was held that the service on the agent of the foreign corporation was good, and that the judgment rendered by the State Court of Ohio was good and valid. It will be observed that the facts in the case just cited are somewhat different from those which appear in the case now under consideration, and, therefore, it is not direct authority on the point raised in this case. But we have cited it, at some length, for the purpose of showing the fundamental principles which lie at the bottom of all questions of this kind.

The next case cited by counsel for respondent which we shall notice is *St Clair* v. *Cox,* 106 U. S. Rep., 350. In that case the question was as to the validity of a judgment rendered by a State Court of Michigan against the Winthrop Mining Co., a foreign corporation, created under the laws of the State of Illinois, in an action commenced by service within the State of Michigan upon one Colwell, described simply as agent of the said Winthrop Mining Co., engaged in business in the State [of Michigan] when service was made on Colwell; and as it did not appear, even *prima facie,* that Colwell stood in any such representative character to the company as would justify the service of a copy of the writ upon him; and as the judgment was rendered by default, there was nothing to show that the Michigan Court had acquired such jurisdiction of the foreign corporation as would entitle it to render a personal judgment against such corporation. In that case the remarks of Mr. Justice Field, who delivered the opinion of the Court, would seem to show that the test as to whether the person upon

whom service is made is such an agent as would render such service valid, is that such agent is the representative of the corporation in the State where the service is made at the time of such service. For Mr. Justice Field, after citing and commenting on a case from Michigan, in which the service was made on the treasurer of a foreign corporation, in the State of Michigan, where the treasurer happened to be casually and not on any business of the corporation, uses this language: "According to the view thus expressed by the Supreme Court of Michigan, service upon an agent of a foreign corporation will not be deemed sufficient, unless he represents the corporation in the State. This representation implies that the corporation does business *or has business in the State for the transaction of which it sends or appoints an agent there*" (italics ours). Again the learned Justice says: "The transaction of business by the corporation in the State, *general or specific,* appearing, a certificate of service by the proper officer or a person who is its agent there, would in our opinion be sufficient *prima facie* evidence that the agent represented the company in the business" (italics ours). The same doctrine was recognized in the subsequent case of *Goldey* v. *Morning News,* 156 U. S. Rep., 518. In that case the plaintiff undertook to commence an action in a State Court of New York against the defendant, a foreign corporation created by the laws of the State of Connecticut, and carrying on its business in that State only, and having no place of business, officer, agent or property in the State of New York, by the personal service of the summons upon the president of such corporation in the city of New York, while temporarily there, where the corporation transacted no business; and the Court held that the service on the president of the corporation while casually in the State of New York, *and not charged with any business of the corporation there,* was invalid for the reason that the president could not, in any sense, be regarded as the representative of the corporation while casually in the State of New York, not for the purpose of attending to any

business of the corporation there. Indeed, we find that in a number of cases which we have consulted, but which need not be cited here, it has been uniformly held by the Supreme Court of the United States that a State Court cannot, in an action *in personam,* acquire jurisdiction of a foreign corporation simply by personal service of the summons upon the president or any other officer or agent of such corporation, while he happens to be casually in the State where the action is commenced, and not there for the purpose of attending to any business of such corporation; and to this doctrine we fully subscribe.

The next case decided by the Supreme Court of the United States, which is cited by counsel for respondent, is *Cooper Manufacturing Co.* v. *Ferguson,* 113 U. S. Rep., 727, but we are unable to perceive what application that case has to the question which we are now considering. In that case, no question as to the validity of the service of any process was raised; for the sole question was whether noncompliance with a certain provision of the Constitution of Colorado, and of the statute passed to carry into effect such constitutional provision, operated as a bar to the action. The action was brought by a corporation created by a law of the State of Ohio, and having its principal place of business at Mount Vernon, in that State, to recover damages for the breach of a contract, entered into in the State of Colorado, with the defendants, who were citizens of the State of Colorado, for the sale and delivery to them on the cars at Mount Vernon of certain machinery at a certain stipulated price. The defendants, amongst other defenses, pleaded, first, that when the contract sued on was entered into, the plaintiff (a foreign corporation) had not made and filed the certificate required by the statute; second, that at the time of the making of the contract, the plaintiff did not have a known place of business in the State of Colorado, and did not have an authorized agent or agents in the State upon whom process might be served. The plaintiff demurred to these two defenses, and the demurrer was overruled. The argument

in behalf of the demurrer was that, inasmuch as the Constitution of Colorado forbids a foreign corporation from doing any business in that State, "without having one or more known places of business, and an authorized agent or agents in the same upon whom process may be served," and inasmuch as the statute declared that "Foreign corporations shall, before they are authorized or permitted to do any business in this State, make and file a certificate * * * with the secretary of State, and in the office of the recorder of deeds of the county in which such business is carried on, designating the principal place where the business of such corporation shall be carried on in this State, and an authorized agent or agents in this State residing at its principal place of business upon whom process may be served," &c., the failure to comply with these provisions operated as a bar to the action.     But the Supreme Court of the United States held that the failure to comply with these provisions could not operate as a bar to the action—two of the Justices holding that to give such a construction to the provisions of the Constitution and the statute of Colorado, would be a violation of the interstate commerce clause of the Constitution of the United States; but the majority of the Court rested their conclusion upon the ground that the provisions of the Constitution and statute of Colorado could not be reasonably construed as forbidding the doing of a single act of business in that State, but the carrying on of business; and we presume the case was cited to show that doing a single act of business within the State of South Carolina by the defendant company would not justify the service of its agents while in this State for the purpose of attending to this single act of business done by defendant in this State.     To say the least of it, this would be a strained inference to be drawn from the case cited; and besides, the majority of the Court based its conclusion upon the peculiar phraseology used in the Constitution and statute of Colorado, and our statute contains no such phraseology.

We have not deemed it necessary to comment upon the

case of *Pennoyer* v. *Neff,* 95 U. S. Rep., 714, cited by counsel for respondent, for the reason that, in that case, there was no personal service *within the State of Oregon,* but the service was made by publication, and it was accordingly there held that a personal judgment is without any validity, if it be rendered by a State Court in an action upon a money demand against a non-resident of the State, who was served by a publication of the summons, *but upon whom no personal service of process within the State was made, and who did not appear;* and no title to property passes by a sale under an execution issued upon such a judgment. Indeed, remarks made by Mr. Justice Field in delivering the opinion of the Court seem to imply that the result would have been different if the service had been made within the *State of Oregon.* For he says: "Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice, within the State where the tribunal sits, cannot create any greater obligation upon the non-resident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability." Substantially the same remarks are made by the same Justice in the subsequent case of *Freeman* v. *Alderson,* 119 U. S. Rep.; recognizing and following Pennoyer *v.* Neff.

Nor do we propose to refer to the cases cited by counsel for respondent, from the Federal Reporter and from other States (with one exception), for two reasons: 1st. Because they are not decisions of Courts of final resort in questions of this kind. 2d. Because a consideration of such cases would unduly protract this opinion to an unreasonable length. The excepted case above referred to is the case of *Colorado Iron Works* v. *Sierra Grande Mining Co.,* 15 Col., 499—reported also in 22 Am. St. Rep., 433—and the reason for making the exception is that it was cited as authority for the following proposition: "A single sale of machinery

within the State [of Colorado] by a foreign corporation does not constitute doing business, within the meaning of the statute," but an examination of the case will show that it does not sustain the above quoted proposition, if it is supposed to refer to the statute regulating the service of process upon a foreign corporation, for it manifestly refers to a different statute—sec. 260 of the Gen. Stat. of Colorado, declaring that: "Foreign corporations shall, before they are authorized or permitted to do any business in this State, make and file a certificate, signed by the president and secretary of such corporation, duly acknowledged, with the secretary of State, and in the office of the recorder of deeds in the county in which such business is carried on, designating the principal place where the business of such corporation shall be carried on in this State, and an authorized agent or agents in this State, residing at its principal place of business, upon whom process may be served." Whereas the statute prescribing the mode of serving a foreign corporation is found in sec. 40 of the Code of Civil Procedure, and reads as follows: "If the suit be against a foreign corporation, * * * service shall be made by delivering a copy of the writ to an agent, cashier, treasurer or secretary thereof; in the absence of such agent, cashier, treasurer or secretary, to any stockholder." The facts as reported in the case are substantially as follows: The plaintiff, a domestic corporation, doing business in the city of Denver, Colorado, contracted in writing with the defendant, a foreign corporation, engaged in mining in New Mexico, to manufacture, furnish and set up for the defendant in New Mexico certain machinery for the reduction of ore, for a stipulated price. The contract was performed by plaintiff, and large payments had been made on the contract, leaving, however, a considerable balance due on the same, for the recovery of which the action was brought. Service of the summons was made by delivering a copy thereof to one Samuel Alsop, a stockholder in the defendant corporation. This service was set aside by the Court below, and the plaintiff appealed.

In the opinion of the Supreme Court it is stated, that "the first and most important question to be determined is, whether appellants could be subjected to the jurisdiction of the Courts of this State," it being contended that the defendant, a foreign corporation, had not, by its acts and dealings in the State of Colorado, submitted itself to the jurisdiction of the Courts of that State, and that this cause could not there be tried and determined. This contention was based upon the conceded fact that the defendant had not complied with the provisions of sec. 260 of the Gen. Stat. of Colorado above referred to, forbidding foreign corporations from doing business in that State until they had complied with the provisions of said section. The Court, however, declined to sustain such contention, holding that a single purchase of machinery in Colorado, cannot be regarded as doing business "in this State, as contemplated *in such section*" (italics ours). The Court then proceeded to inquire whether the State Court had obtained jurisdiction of the defendant by the service upon Alsop; and after setting out the provisions of sec. 40 of the Code of Civil Procedure, as quoted above, used this language: "We conclude, therefore, that the contracting of the debt in question was a sufficient doing business within this State to render the corporation amenable to the Courts of this State, if jurisdiction could be obtained by service of process as provided in sec. 40 of the Code." And after finding as a fact (which was contested by appellant), that Alsop was a stockholder of the defendant corporation at the time he was served with the summons, held that such service was sufficient to bring the defendant within the jurisdiction of the State, and reversed the finding of the Circuit Court to the contrary. So that the case just considered is really in favor of rather than opposed to the view which we adopt.

We may also cite the case of *Ford* v. *Calhoun,* 53 S. C., 106, in which it was held that the Circuit Court may acquire jurisdiction of the person of a non-resident by the service of a summons upon him, *while in this State,* whether he

have property here or not.   In that case, after citing the
statutory provision upon the subject, the Court used this
language, which seems quite pertinent to the present in-
quiry : "Besides this explicit statutory provision, the reason
of the thing supports our view.   The object of the service
of any legal process is to notify the party served of the
proceeding against him, and to obtain jurisdiction of his
person, and both of these objects are attained where a per-
son, whether a non-resident or a resident of this State, has
been personally served within the jurisdiction of the Court
where such proceeding is pending."   For in the case under
consideration there can be no doubt that the defendant cor-
poration had, by the service of the summons on its agent,
Schminke, full notice of the proceeding in ample time to
have served its answer, as is conclusively shown by the fact
that the defendant was notified in time to employ counsel,
and prepare and submit affidavits in support of the motion
to set aside the service of the summons.   It is true, that in
Ford *v.* Calhoun, the question was as to the service upon a
natural, and not upon an artificial person, like a corporation.
But as we understand the decisions of the Supreme Court
of the United States, there is no difference whether the
question is as to the service of an individual non-resident
and a foreign corporation, provided the service, in case of a
corporation, is made upon an officer or agent of the corpo-
ration, who is acting as the representative of such corpora-
tion, at the time of service—a matter which will hereinafter
be considered.   The only other authority which we propose
to cite is the recent decision of the Supreme Court of the
United States in the case of *The Connecticut Mutual Life
Ins. Co.* v. *Spratley,* 172 U. S. Rep., 602, in which this
whole subject is considered at length.   That case, in some
of its features, is very much like the case now under consid-
eration.   In that case the summons was served on an agent
of a foreign corporation while temporarily (though not
casually) in the State of Tennessee, where he had been sent
by the foreign corporation to look into the claim out of which

the cause of action arose upon which the suit was brought in the State Court of Tennessee, and the Supreme Court held that by such service the State Court acquired jurisdiction of the foreign corporation, and that the judgment of the State Court, though obtained by default, was a good and valid judgment.   In that case, Mr. Justice Peckham, in delivering the opinion of the Court, after declaring that it is not necessary that the agent upon whom service is made should be *expressly* invested with authority to receive service or process in behalf of the foreign corporation, but that authority may be implied, uses the following language: "If it appear that there is a law of the State in respect to the service of process on foreign corporations, and that the character of the agency is such as to render it fair, reasonable and just to imply an authority on the part of the agent to receive service, the law will and ought to draw such an inference and to imply such authority and service under such circumstances, and service upon an agent of that character would be sufficient."

As we have seen above, and as is held in the case last cited, the character of the agency depends upon the inquiry whether the agent can be regarded as the representative of the corporation in respect to the transaction out of which the suit arises.   The practical inquiry, therefore, is whether George F. Schminke was the representative of the defendant corporation in this State, in regard to the transaction out of which this controversy arose.   This must be determined by an examination of the undisputed testimony in the case, proceeding largely, and in fact entirely, from the defendant corporation itself.   It must be remembered that the Circuit Judge did not find that Schminke was not the agent of the defendant; and, indeed, could not have so found without totally disregarding all of the testimony in the case.   All that he found was that Schminke was not, in his opinion, "an agent, in the sense in which 'any agent' is used in the Code;" and this was a conclusion of law, based upon his construction of the meaning of the words, "any agent," as

used in the Code, and was not a finding of fact at all, except that his phraseology implies that he found as a fact that Schminke *was* an agent of the defendant company, but that according to his construction of the language of the Code, he was not *such* an agent as the Code contemplated. This Court is, therefore, at liberty to consider and determine for itself, from the *undisputed* testimony in the case, whether Geo. F. Schminke must be regarded as such a representative of the defendant corporation, in reference to the transaction out of which this action arose, as would, under the decisions of the Supreme Court of the United States, justify the service of the summons upon Schminke. It seems to us that the letters of the defendant corporation, used at the hearing of this motion below, fully show that Schminke, when served with the summons in this State, was here as the representative of the defendant corporation in the very transaction out of which this controversy arose. In the first letter, under date of 23d October, 1900, which shows on its face to have been written in reply to a letter from plaintiff to defendant, of the 6th of October, 1900, which was not offered in evidence, but its tenor may be inferred from the reply, to have been a notification or complaint of the deficiency in the machinery; the defendant says amongst other things: "We have written *our* Mr. George F. Schminke, who will be in Abbeville now in about ten days, and we will get a full report from him;" and expresses the hope that plaintiff "will bear with us" for a while. To this letter plaintiff replied by letter dated 27th of October, 1900, in which, after stating that plaintiff was taking steps to buy a new machine, as they could not afford to be delayed any longer in the matter, the following language is used: "Now, in consideration of what you say in your last about sending your Mr. Schminke to Abbeville by the 3d proximo, we will defer buying the machine above referred to until the 5th proximo, provided you write us at once that your authorized representative will be in Abbeville by the above date, with power to act, so that we may be assured of a speedy settlement." To this letter

defendant replied, under date of 29th October, 1900, in which, after saying that they had telegraphed "*our* Mr. Geo. F. Schminke," asking him to wire defendant when he would be in Abbeville, and after saying that they had no doubt that Schminke would be able to reach Abbeville not later than the 5th of November, &c., used this language: "We trust that you will defer action on this matter until you give *us* an opportunity to look over the ground for *ourselves, which we will do when our Mr. Schminke arrives in Abbeville.*" And again on the 1st of November, 1900, the defendant wrote plaintiff: "Our Mr. G. F. Schminke will be in Abbeville on the 5th inst.; and we are writing him fully to-day regarding the situation there." If the language which we have quoted above, especially that which we have italicized, does not show that Schminke was sent to Abbeville as the *representative of* defendant in relation to the very matter in dispute between the parties, then we are at a loss to conceive what language could show more conclusively that fact. If. so, then the service of the summons upon Schminke, while in Abbeville, for the purpose of representing the defendant corporation in the very matter in dispute between the parties, would be held by the Supreme Court of the United States, even apart from our own Code of Procedure, a valid service upon the defendant corporation. For, as said by Mr. Justice Field, in *St. Clair* v. *Cox,* at p. 359: "While service upon an agent of a foreign corporation will not be deemed sufficient unless he represents the corporation in the State where such service is made; yet if he is the representative of the corporation in the State at the time the service is made, such service would be sufficient; and this representation implies that the corporation does business, or has business, in the State, for the transaction of which it sends or appoints an agent there." We are of opinion, therefore, that service upon the agent of the defendant corporation, while in this State for the purpose of attending to the business of the corporation here, in any view that may be taken of the case. was

a good service, and that the Circuit Judge erred in holding otherwise.

The judgment of this Court is, that the order of the Circuit Judge setting aside the service of the summons in this case, and dismissing the case for want of jurisdiction, be reversed, and that the case be remanded to the Circuit Court for Abbeville County for such further proceedings as may be necessary, with leave to the defendant to serve its answer within twenty days after written notice to the counsel who represented the defendant at the hearing of the motion to set aside the service of the summons of the filing of the *remittitur* in this case in the Circuit Court for Abbeville County.