**ERLANGER MILLS, Inc., Appellant,**

v.

**COHOES FIBRE MILLS, Inc.,**
**Appellee.**
**No. 7262.**

United States Court of Appeals
Fourth Circuit.
Argued Oct. 18, 1956.
Decided Nov. 7, 1956.

504

Walter F. Brinkley and Don A. Walser, Lexington, N. C., for appellant.

Hiram H. Ward and S. A. DeLapp, Lexington, N. C., for appellees.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOBELOFF, Circuit Judge.

This appeal involves the jurisdictional power of the state of North Carolina to subject a foreign corporation to the processes of its courts. The relevant portions of the North Carolina statute, G.S. § 55–38.1, provide as follows:

*"Jurisdiction over foreign corporations not transacting business in this State*—(a) Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

"(3) Out of the production, manufacture, or distribution of goods by such corporation with the *reasonable expectation that those goods are to be used or consumed in this State and are so used and consumed,* regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent contractors or dealers." (Italics supplied.)

The appellant, Erlanger Mills, Inc., a North Carolina corporation having its principal place of business in Lexington, contracted to purchase rayon garnet (a synthetic yarn) from the appellee, Cohoes Fibre Mills, Inc., a New York corporation having its principal offices in Cohoes, New York, the goods to be used in Erlanger's manufacturing plant in North Carolina. The order was placed by Erlanger after a visit by its representatives to Cohoes' plant in New York and was accepted there. The goods were sold f. o. b. Cohoes, New York. Shortly after receiving the shipment, Erlanger complained that the yarn was defective; and following several communications between the parties, Crowther, the general manager of Cohoes, went to Lexington to discuss the complaint. The appellant concedes that Cohoes had never done any business in North Carolina prior to these transactions with appellant.

Erlanger filed suit in the Superior Court of Davidson County, North Carolina to recover damages, alleged to be $17,000. The deputy sheriff served Crowther with the summons while he was

in the offices of Erlanger in Lexington, discussing its claim.

The case was subsequently removed to the Federal District Court, where a motion was made to quash the service on the ground that the North Carolina statute G.S. § 55–38.1(a) (3) was invalid as applied to this case. The Judge concluded that Cohoes was not doing business and was not present in North Carolina and that the statute, as applied to it, was a denial of due process of law. The case was accordingly dismissed; whereupon this appeal was entered.

The question for determination is whether or not § 55–38.1(a) (3) may validly subject the appellee to the jurisdiction of North Carolina for a single sale consummated in New York "with the reasonable expectation that those goods are to be used in [North Carolina] and are so used and consumed".

■ It is elementary that for a court to entertain an action *in personam* against a foreign defendant, jurisdiction over the "person" must be acquired. Traditionally, this has comprised two elements: (1) the power to subject him to the jurisdiction of the court, and (2) effectively bringing him before the court by proper notice. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. It is the former with which we are here concerned.

■ In order to subject a foreign corporation to the state's jurisdiction, due process of law had long required it to be constructively "present" within the state by doing business therein unless it had consented to jurisdiction either explicitly or impliedly by a general appearance. Where such facts were found, the obligation of submitting to the processes of the State's courts was deemed the justifiable price for the benefit of conducting business activities under the protection of the local laws, even if it involved the inconvenience of defending suits away from home and the place where it customarily did business. International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95.

■ In recent years, however, the fictional phrase "constructive presence" has been replaced by a test couched in more realistic language. The standard of jurisdictional due process as now expressed is that the defendant have "certain minimum contacts" with the state of the forum, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, supra, 326 U.S. at page 316, 66 S. Ct. at page 158, 90 L.Ed. 95; Travelers Health Association v. Com. of Virginia, 339 U.S. 643, 648, 70 S.Ct. 927, 94 L.Ed. 754. The problem in each case, therefore, is to determine whether or not the relationships, ties, and contacts between the defendant and the state of the forum warrant jurisdiction.

■ Assuredly the extension of jurisdiction over foreign corporations in the circumstances provided by Section (a) (3) could not be sustained under the "constructive presence" or "doing business" tests, for the statute is indeed entitled "Jurisdiction over foreign corporations not transacting business in this State." That the appellee had never previously done business in North Carolina is conceded by Erlanger, and it would be difficult to rationalize the single transaction consummated in New York, and a shipment f. o. b. New York, as "doing business" in North Carolina. Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; Cooper Manufacturing Co. v. Ferguson, 113 U.S. 727, 5 S.Ct. 739, 28 L.Ed. 1137; Dealer's Transport Co. v. Reese, 5 Cir., 138 F.2d 638; Ladd Metals Co. v. American Mining Co., C.C.Or., 152 F. 1008.

This is so even though the place of execution and of performance of the contract are not alone decisive. Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 62 S.Ct. 602, 87 L.Ed. 777; Travelers Health Association v. Com. of Virginia, supra, 339 U.S. at page 648, 70 S.Ct. at page 929.

■ But the appellant presses upon us that the "minimum contacts" test laid

down in the International Shoe case so liberalized the law that jurisdiction may be maintained over a foreign corporation which does no more than ship its product into North Carolina on one occasion. Though the "minimum contact" theory may have liberalizing tendencies, it was not so much an innovation on due process as it was a rephrasing of the prevailing fictional tests, in order more properly to describe the judicial methodology long employed. "Presence" is a word used merely to symbolize the amount of the corporation's activities within the state which courts require in order to satisfy due process. International Shoe Co. v. State of Washington, supra, 326 U.S. at page 317, 66 S.Ct. at page 158, citing Hand, J. in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141.

Our attention has been called to no case either before or after International Shoe that would justify jurisdiction on the minimal contact which appellee had with North Carolina.

The facts of the International Shoe case are in no way analogous to those here presented. The International Shoe Co. was engaged in the manufacture and interstate sale of shoes. It had no offices in the State of Washington, and made no contracts of sale or purchase there, sales not being final until accepted by the St. Louis office. But the company had as many as thirteen salesmen who resided there and sold its products in that state exclusively. The salesmen solicited a large volume of business in Washington, and their annual commissions sometimes totaled as high as $31,000. At times they rented "sample rooms" in office buildings or hotels where the company's products were exhibited to customers. In these circumstances the Supreme Court held that the required minimum contacts existed to support jurisdiction.

Travelers Health Association v. Com. of Virginia, supra and Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 492, are also cited by appellant to justify jurisdiction in this case. In the former, the Iowa association did not have agents in Virginia as did International in the State of Washington, but since 1904 they had solicited new members in Virginia by mail, and had approximately 800 members in the state. That case and the one before us are patently different. In the words of Mr. Justice Black in Travelers': "The Association did not engage in mere isolated or short-lived transactions. Its insurance certificates, systematically and widely delivered in Virginia following solicitation based on recommendations of Virginians, create continuing obligations between the Association and each of the many certificate holders in the state." Travelers Health Association v. Com. of Virginia, supra, 339 U.S. at page 648, 70 S.Ct. at page 930.

And in the Perkins case, the Supreme Court held that due process would not be violated if the courts of Ohio maintained jurisdiction in a suit by a non-resident against a foreign corporation which held directors' meetings in Ohio, did its banking and carried on other administrative functions in the state. The Court pointed out that the corporation was carrying on a part of its business within the State continuously and systematically; this cannot possibly be said of Cohoes.

While the due process test applied to the problem of state jurisdiction over non-residents for taxing purposes is not identical with the due process test for the exercise over them of state judicial power, the two present a close parallel. See International Shoe Co. v. State of Washington, supra. For this reason we deem relevant the decision in Miller Brothers v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744, where it was declared beyond the power of the State of Maryland to hold a Delaware retailer responsible for the collection of the use tax due the State by Maryland residents who purchased from Miller in Delaware. Indeed, Miller, by its own truck or by common carrier, regularly delivered into Maryland the merchandise it had sold in Delaware. Although Miller's contacts with Maryland were more substantial than those of the present appellee with North Carolina, the statute as

sought to be applied was condemned, in the absence of the necessary "definite link" and "minimum connection" to satisfy the requisites of due process. Miller Brothers v. State of Maryland, supra, 347 U.S. at page 345, 74 S.Ct. at page 539.

■ Citizens of different States may, if they deem it desirable, agree that any disputes arising out of a commercial transaction between them shall be subject to the jurisdiction of the courts of the State of one of the parties. Agreements of this kind are not unknown; but such is not the case here, where the courts of a State with which the defendant has had insufficient contact under recognized concepts of due process are attempting to exercise jurisdiction over it without its consent.

Giving full scope to whatever liberalization results from the International Shoe case, the principle there declared does not, in our view, sustain jurisdiction in the North Carolina courts, where the only contact has been a single interstate shipment into North Carolina under the circumstances above recited.

The appellant suggests that the size of the monetary interest involved—claimed damages of $17,000.00—supplies the minimum contact required. The Supreme Court has said that the quality and nature of the activity must be considered, International Shoe Co. v. State of Washington, supra, 326 U.S. at page 319, 66 S.Ct. at page 159, and it may be conceded that in some circumstances the sum involved may also be pertinent; yet the bounds of due process cannot be staked-out in financial niceties in order to sanction jurisdiction not otherwise justifiable.

The orderly and fair administration of the laws throughout the nation is a highly important factor to consider. Davis v. Farmers' Cooperative Equity Co., 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996; International Shoe Co. v. State of Washington, supra, 326 U.S. at page 319, 66 S.Ct. at page 159. We cannot shut our eyes to the disorder and unfairness likely to follow from sustaining jurisdiction in a case like this. It might require corporations from coast to coast having the most indirect, casual and tenuous connection with a State to answer frivolous law suits in its courts. To permit this could seriously impair the guarantees which due process seeks to secure.

Furthermore, to sustain jurisdiction here would not only be offensive to the due process clause, but it would involve the danger of grave burdens and impediments to interstate commerce, if the door should be opened to similar legislation by other States. Davis v. Farmers' Cooperative Equity Co., supra; Atchison, T. & S. F. R. Co. v. Wells, 265 U.S. 101, 44 S.Ct. 469, 68 L.Ed. 928; cf. Denver & Rio Grande Western Railroad Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295; and International Milling Co. v. Columbia Transportation Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396. To illustrate the logical and not too improbable extension of the problem, let us consider the hesitancy a California dealer might feel if asked to sell a set of tires to a tourist with Pennsylvania license plates, knowing that he might be required to defend in the courts of Pennsylvania a suit for refund of the purchase price or for heavy damages in case of accident attributed to a defect in the tires. As in the hypothetical case, the sale in the principal case was "with the reasonable expectation that these goods are to be used or consumed in [the vendee's domicile] and are so used and consumed." It is difficult to conceive of a more serious threat and deterrent to the free flow of commerce between the states.

We are not persuaded by the argument that jurisdiction should be sustained because it is said there would be jurisdiction if the suit were for a tort arising from the transaction between the parties rather than for a breach of the contract. Appellant's premise, that there would be jurisdiction if the case were one in tort, is without authoritative support. Counsel refers us to the statutes of several other states—and to cases in tort and contract arising under them—which at-

tempt to enlarge their respective jurisdictions over foreign corporations. While we refrain from expressing any opinion as to the validity of these enactments, it is sufficient to note that none goes as far as the statute which is here challenged.

The case of Johns v. Bay State Abrasive Products Co., D.C.Md., 89 F.Supp. 654, is clearly distinguishable. An action for negligence was there allowed because the foreign corporate defendant had made a substantial number of sales of its product in Maryland and had not engaged merely in an isolated transaction.[1] Likewise distinguishable is Hall v. Flintkote Co., D.C.Md., 139 F.Supp. 32, where Judge Thomsen ruled that the defendant was "doing business" within the state, thereby making irrelevant the statute asserting jurisdiction over acts done within Maryland by foreign corporations not "doing business" therein.[2]

Jurisdiction has, however, been maintained over a foreign corporation committing a single act within a state, in a suit for negligently-performed repairs of the plaintiff's roof. Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193, holding valid Vermont Rev.Stat. section 1562. Though we voice no opinion regarding the correctness of the decision, we think that its result falls far short of what is sought to be accomplished by the North Carolina statute with which we are concerned.[3] Another instance of jurisdiction sustained on the basis of a single act is Compania De Astral, S. A. v. Boston Metals Co., 205 Md. 237, 107 A.2d 357, 108 A.2d 372. In that case, too, the jurisdictional contacts were not as lean as in the present case.[4]

Distinguishable also are cases sustaining jurisdiction by substituted service over non-resident motorists who employ dangerous instrumentalities in negligent fashion while enjoying the privilege of the state's highways. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Kane v. State of New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L. Ed. 1158; Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446. Such decisions rest upon a legal fiction of consent, but as Chief Justice Stone pointed out for the Supreme Court in International Shoe, supra, it may be said that the quality and nature of the acts done within the State justified the fiction.

An alternative ground for sustaining jurisdiction has been suggested by the appellant, that even if the statute be invalid, the presence of Cohoes' general manager in Lexington to arrange a settlement provides the minimum contact required.

█ █ If the appellee corporation had insufficient contact or relations with North Carolina to warrant the assertion of jurisdiction over it, it seems to us grasping at a straw to say that the entry of its agent on an isolated occasion to dis-

---

1. With regard to the latter type of situation, Judge Chesnut intimated that such statutory provisions (Article 23, section 119(d) of the Maryland Code of Public General Laws) might at times infringe upon the due process clause, even giving full weight to the doctrine laid down in the International Shoe case, supra. Johns v. Bay State Abrasive Products Co., supra., 89 F.Supp. at page 663.

2. The foreign corporate defendant had two salesmen in Maryland who also gave "service" to the corporation's customers and made inspections to ensure proper installation of the company's products, and the company had telephone listings in Maryland.

3. By the Vermont decision, foreign corporations are made amenable to the Vermont courts in causes arising from a single transaction made and consummated wholly within the state's boundaries. By contrast, the case at bar involves a contract of sale consummated in New York, and the only contact with the state of the forum is the subsequent shipment of the goods from New York into North Carolina.

4. While the defendant was not regularly doing business in Maryland, at least the contract between the parties was consummated in the State, the ships to be purchased by defendant were lying in Maryland waters, and the defendant had deposited funds in escrow in Baltimore.

cuss the claim supplied the necessary tie to give the State power. This incidental and ephemeral presence of the appellee's agent is not the equivalent of the presence of the appellee, and it is to be remembered that it is the appellee's "presence"— a term that symbolizes adequate contacts—that is needed to make it amenable to suit in North Carolina. So also "contacts" is not to be understood in the most literal sense, as though the law's requirement is satisfied by a foot-fall on the State's soil. The word refers to a relationship through activity deemed substantial.

Several of the cases relied upon by the appellant are not helpful to sustain its contrary view of the law because they present no problem of "doing business" or having "minimum contacts;" they involve the narrower question of the appropriateness of serving a particular agent of a corporation that is amenable to the jurisdiction of the courts. Atkinson v. U. S. Operating Co., 129 Minn. 232, 152 N.W. 410, L.R.A.1916E, 241; Premo Specialty Mfg. Co. v. Jersey-Creme Co., 9 Cir., 200 F. 352.

▅▅▅ The question here is not whether the general manager was a suitable person to be served with process if the corporation were subject to process. The question to begin with is whether there is legal power in the State's courts over the corporation. If the appellee, by reason of "some jurisdictional fact or event to serve as a conductor," Miller Brothers v. State of Maryland, supra, 347 U.S. at page 343, 74 S.Ct. at page 538, were subject to that power, the service upon its

general manager would doubtless be good; but if it was not subject to that jurisdiction prior thereto, it was not made subject by the presence of the general manager. While there are decisions to the contrary,[5] we think the better view is in accord even in cases where the corporate representative comes into the state to negotiate settlement of a dispute.[6]

The Constitution which was ordained "to form a more perfect union," contemplates that the boundaries between the states shall have continued significance for some purposes though not for all. If one State may, without violation of the due process clause, extend the authority of its courts beyond its boundaries over persons and situations not sufficiently related to that State, the separate identity of the States will be reduced to a mere fiction. Individual states could undertake at the expense of other States to enlarge the sphere of their authority to nationwide dimensions. It requires no flight of fancy to foresee the resulting maze of lawsuits adjudicating the interests of persons having only the faintest and most remote links with the State exercising authority. If the due process clause is not effective to restrain such extensions of local power, then the federal system is likely to be transformed into something very different from anything we have known.

We agree with the conclusion of the District Court that the North Carolina statute as applied to this case is invalid. As there are no other grounds sufficient for jurisdiction, the order of dismissal is

Affirmed.

5. Dungan, Hood & Co. v. C. F. Bally, Ltd., D.C.E.D.Pa., 271 F. 517; Brush Creek Coal & Mining Co. v. Morgan-Gardner Electric Co., C.C.W.D.Mo., 136 F. 505; Houston v. Filer & Stowell Co., C.C.N.D. Ill., 85 F. 757; Abbeville Electric Light & Power Co. v. Western Electric Supply Co., 61 S.C. 361, 39 S.E. 559, 55 L.R.A. 146.

6. Louden Machinery Co. v. American Malleable Iron Co., C.C.S.D.Iowa, 127

F. 1008; Clews v. Woodstock Iron Co., C.C.S.D.N.Y., 44 F. 31; Wilkins v. Queen City Savings Bank & Trust Co., C.C. S.D.N.Y., 154 F. 173; Hoyt v. Ogden Portland Cement Co., C.C.N.D.N.Y., 185 F. 889; Craig v. Welch Motor Car Co., C.C.S.D.N.Y., 165 F. 554. Cf. S. Howes Co. v. W. P. Milling Co., Okla., 277 P.2d 655, where the agent came into the State not only to investigate but also to arrange for adjustments upon a machine his principal had sold.