WREN v. JOHNSON.

1. JUDGMENT—JURISDICTION—SERVICE OF SUMMONS—MOTION TO VACATE—APPEARANCE.—Where a Circuit Judge has adjudged a judgment void which has been obtained by personal service of a citizen in a foreign State, without publication, without attachment, and without leaving a copy of summons at his place of residence in this State, he cannot require the defendant to appear and plead, or in default the judgment shall be valid, and motion on the record and affidavits is the proper practice to set aside such judgment, and appearance for that purpose only does not give Court jurisdiction of person of defendant.

2. IBID.—SERVICE OF SUMMONS—WAIVER—EXECUTION.—APPEARANCE in motion to stay execution issued in a void judgment, being a part of the remedy to move to set aside the judgment, does not waive defects in original service.

3. A SUMMONS is not a mere notice of commencement of an action, but is a procedure by which Court acquires jurisdiction of person of defendant in a purely personal claim or action.

Before KLUGH, J., Abbeville, June, 1901.   Reversed.

Motion in case of J. H. Wren against J. Altheus Johnson. From Circuit order, defendant appeals.

*Messrs. Frank B. Gary* and *Wm. P. Greene,* for appellant, cite: 2 Ency. P. & P., 625; 46 S. C., 11; 20 S. E. R., 985; 13 S. C., 202; 96 Ill., 131; 44 S. C., 181; 19 Ency. P. & P., 603; 95 U. S., 714; 28 Col., 151.

*Mr. Wm. N. Graydon,* contra, cites: *Order is in discretion of Court and not appealable:* 17 S. C., 451; Code, 195; 19 S. C., 554; 38 S. C., 556. *On main question:* Freeman on Judgts., 3 ed., 126; 2 Dillon, 351.

February 25, 1902.   The opinion of the Court was delivered by

MR. JUSTICE POPE.   The action was commenced about the 19th day of September, 1900, by the service of a summons and complaint upon the defendant, in the city of Washington, District of Columbia, by a citizen whose name was G. Russell Cain, although the defendant refused to accept such service.   On the 21st day of February, 1901, upon the affidavit of said G. Russell Cain, made before a notary public in and for the said District of Columbia, and upon the affidavit of William N. Graydon, Esq., as plaintiff's attorney, that no answer, demurrer or notice of appearance had been made upon him by the defendant in the action, his Honor, W. C. Benet, as presiding Judge, granted a judgment for the plaintiff against the defendant for the sum of $128.55, with interest on $125 from the first day of August, 1899, amounting in all to the sum of $142.81, and costs.   There was no attachment of defendant's property in this State, although he owned a residence in the village of Due West, in the county of Abbeville, in this State, at which his mother lived.   There was no order for publication of the summons and no publication thereof.   There was no service of the summons or complaint except that attempted to be made in

the city of Washington, D. C. Judgment was duly entered against the defendant by the plaintiff.

On the 23d day of March, in the year 1901, the defendant, through his attorney, served upon the plaintiff, J. H. Wren, and his attorney the following notice (formal, parts omitted) :

"Please take notice that 'the undersigned, as attorney for the defendant, J. Altheus Johnson, will at the next term of the Court of Common Pleas for Abbeville County, and on the first day of said term, at 10 o'clock A. M., or as soon thereafter as counsel can be heard, move the Court to vacate the judgment rendered in said case at the February, 1901, term of said Court, on the ground that the said Court was without jurisdiction to render said judgment, for the following reasons, to wit:

"I. Because the defendant was not served personally with the summons in said case within the State, nor was the said summons left with a person of discretion, nor upon any person whatsoever, residing at the residence or employed at the place of business of said defendant within the State.

"II. Because said summons was not served upon the defendant by publication, nor was an order of publication of said summons made in the manner provided by law.

"III. Because this defendant has not voluntarily appeared in the case, nor has he waived any of his rights under the law.

"The motion will be made upon all the pleadings and proceedings in the case, and upon the affidavits hereto attached. That the undersigned will appear for the purposes above set forth and for no other."

The following attached affidavit was served with the said notice:

"District of Columbia. J. Altheus Johnson, on oath, says as follows: In regard to the proceedings instituted against me by John H. Wren in the Common Pleas Court of Abbeville County, S. C., I wish to state the following facts: On April 1, I received a letter from Mr. Wm. N. Graydon,

of Abbeville, S. C., bearing date of the day before (31 March, 1900). To that letter I made response April 4th, 1900. The original of the letter from Mr. Graydon and a copy of my response thereto are hereto attached, to be taken and read as a part of this affidavit. On June 3, 1900, I received another letter from Mr. Graydon, of date the day before (June 2, 1900). To that letter I made response June 7, 1900. The original from Mr. Graydon and a copy of my answer thereto are also attached, to be taken and read as a part of this affidavit of fact. I heard nothing further from Mr. Graydon until March, 1901. However, on September 19, 1900, a young man, whom I did not know, and whose name I did not inquire about, came to my office at 408 Fifth street, North West, in the city of Washington, D. C., between 12 and 1 o'clock midday, and asked me to accept service of a paper he had. Looking at the paper, I saw it was a formal complaint drawn for the Common Pleas Court of Abbeville County, S. C., on the claim of John H. Wren (referred to in the correspondence above mentioned) and demanded judgment against me in the sum of $128.45. I told the young man I would not accept service of that paper. My refusal seemed to disappoint him. He indicated the place which had been prepared, he said, for my signature on the paper (which was evidently the paper intended to be treated as the orignal in Court), and he said he had a copy of the paper to be left with me. I told him he could leave with me his copy, if he wanted, but that I would not at that time sign any waiver or acceptance of service. The incident thus mentioned as taking place on the 19th day of September, 1900, did not occur to me in any other light than as a request that I waive or forego the formal citation and service which it would be necessary to use to bring me into Court, unless I should agree to dispense with such citation and service. I had made a proposition, by way of compromise, intended to save Mr. Wren from loss. He was evidently preferring to assert his claim in the Courts. I was content, in that view of the case, to stand on my rights

as a prospective defendant and let him first, by the orderly process of the Court, put me in a position where he could legally demand, either that I make answer to the claim he was asserting, or else that the Court take it as confessed. I knew that I was either a resident of the State of South Carolina, or that I was a non-resident, and I knew that in either case the law had provided a method for serving process necessary to be observed before the Court would be authorized to proceed to judgment in the absence of the defendant. From the said 19th day of September, 1900, to the 5th day of March, 1901, I was not at any time within the State of South Carolina, neither myself, my wife, nor either of my children, but during all the time from September 19, 1900, to March 5, 1901, either my mother, or in her absence, some other person of discretion, was residing in the home at Due West, S. C., which in the paper shown to me on September, 1900, is styled the 'Johnson Homestead.' During all that period I did not hear a word from any person concerning the claim of Mr. Wren, and did not even know that a suit had been filed in his behalf. I did not assume that the young man who spoke with me on the 19th day of September, 1900, had in his custody, 500 miles from the limits of the State, the original papers in the suit then pending in the Common Pleas Court of Abbeville County. Nothing about his air, manner or word indicated that he was the authorized custodian at that time of the original papers belonging to the files of a Court in South Carolina. I took for granted that his visit, like the letter from Mr. Graydon on June 2, 1900, was merely on the line of having me indorse on a paper to be thereafter filed in Court, a waiver of a right I was entitled to stand on, and I declined to make the indorsement. I knew that the law of South Carolina, when a resident defendant could not be served with process within the limits of the State, had provided service to be made on 'any person of discretion residing at the residence or employed at the place of business of said defendant,' but I had no idea that on the 19th day of September, 1900, Mr. Graydon, or any other

person, was seeking to have process from a State Court run outside the State or have vitality 500 miles beyond the limits of the State. From July 18th to July 25th, 1900, I was in South Carolina, and three days of the time at Due West, but I heard nothing during that time of any suit of Mr. Wren, and barring the incident above mentioned on September 19th, 1900, I heard not a word about a suit pending until March 5, 1901, when I received a letter from Mr. Graydon that bore date of the day before (March 4th, 1901). This letter was of the following tenor:

"'Mr. J. Altheus Johnson, Washington, D. C.—Dear Sir: I have this day entered up judgment against you in favor of Mr. J. H. Wren for $151.58. Unless the amount is settled at once, I will have to instruct the sheriff to levy upon your property to pay said judgment. Yours truly, Wm. N. Graydon.'

"The original of this letter of March 4, 1901, I sent to an attorney at Abbeville, asking him to give the matter the attention it deserved."

The letters referred to as a part of the affidavit are too long to be reproduced. Suffice it to say, that Mr. Graydon's letter to Mr. Johnson is a courteous note calling his attention to the plaintiff's claim placed in his hands for collection. It concluded with these words: "Please let me hear from you, as I don't want to take any steps against a brother lawyer if it can be avoided." The defendant's answer to this letter was also courteous, but explains in detail why he cannot recognize the plaintiff's claims as just, saying: "I do not regard that I owe Mr. Wren according to these figures;" and showing in detail why he fails to accept and pay these claims. The letter of June 2, 1900, of Mr. Graydon is a letter asking if defendant cannot accept service, as his client has instructed that suit be brought. Mr. Johnson's reply is courteous; he speaks of coming to the State in the summer, "when the matter of personal service or acceptance thereof could, of course, be had." No more delicate relation than lawyer and client can exist. Therefore, Mr. Graydon, rep-

resenting his client, who instructed suit to be brought, had either to do so or otherwise to surrender his employment. The "Case" speaks of the motion and what transpired at its hearing as follows, together with the order passed by Judge Klugh, before whom it came on to be heard:

"This motion came on for a hearing at the June, 1901, term of Court of Common Pleas for Abbeville County, on the notice as given and the affidavits and letters. The defendant offered in reply the affidavit of Mr. Hugh Wilson, stating that a certain article in his paper, *The Press and Banner,* was written by Mr. J. Altheus Johnson. So much of the article as was relied on is as follows: 'In the affidavit thus quoted, Mr. Johnson does not say whether he should be treated as a resident or non-resident, but only that he expects the plaintiff to call him into Court as the one or the other. However, he would hardly deny that his residence is in this jurisdiction. He has preserved his name on the registration list of voters for the Due West township, and his friends at Washington often rally him as a person whose body is in Washington, but whose heart and soul are in his native Carolina.' "

After argument of the question involved, Judge Klugh made the following order (formal parts are omitted) :

"The plaintiff recovered a judgment by default against the defendant in the above entitled action at the February term, 1901, of this Court. The defendant now moves the Court to vacate the said judgment, on the ground that it is void for the reason that the summons in said action was never legally served upon him, and the Court, therefore, never acquired jurisdiction of his person. It appears that the defendant owns property in the town of Due West, in said county and State, and maintains his citizenship there, while he has an office or place of business in the city of Washington, D. C., and spends almost all of his time there. This action was commenced against him by the service of the summons and complaint personally on him at Washington, but no publication, nor order for publication, of the summons was ever

made. This was not a legal service, the defendant never appeared, demurred or answered, and was, therefore, not subject to the jurisdiction of the Court at the time when the judgment was rendered against him. *It follows that the judgment was void* (italics ours).

"The plaintiff objects that this motion is not the proper practice in seeking relief against the judgment, even if void. The case of *Crocker* v. *Allen,* 34 S. C., 460, reviews the decisions both before and since the adoption of the Court of Procedure, and settles conclusively the doctrine that the proceeding by motion in the cause in which the judgment was rendered is the most expeditious and the proper method of seeking relief in a case like this. In that case, which was a bill on the equity side of the Court to set aside and vacate a judgment alleged to be void for want of legal service of the summons, precisely the present case, the Court actually refused the relief sought, partly on the ground that the proper procedure was by motion in the cause, the procedure here. The motion is addressed to the discretion of the Court, and in granting it the Court may impose terms. This was done in many of the cases cited by the Court and followed in the case of *Crocker* v. *Allen, supra.* The ground of the present motion is purely and extremely technical. The defendant not only had the notice of the suit against him furnished by the defective service, but he had carried on a considerable correspondence prior thereto with the plaintiff's attorney in reference to the claim, and had outlined with great minuteness and volume his objections to the claim and his probable line of defense; and in the course of this very courteous correspondence had led the said attorney to believe that he would either accept service or place himself within reach of service within the State, so as to save the expense and delay of service by publication. I think it is a case in which terms ought to be imposed. It is, therefore, ordered, that the judgment heretofore rendered in this case be set aside and vacated, provided, the defendant shall within forty days from the filing of this order appear and demur to or

answer the complaint of the plaintiff herein, and in all respects submit himself to the jurisdiction of the Court herein as completely as if he had been served with the summons in manner prescribed by law, and if he shall fail or refuse to comply with these terms, then that the said judgment stand confirmed and motion be dismissed with costs."

The defendant appealed from this order on the following grounds:

"I. Because his Honor erred in holding that the granting or refusing of the relief sought by the motion in this case was a matter within his discretion, when it is submitted that the only matter before his Honor was whether the defendant had been legally served with process, which is a question of law to be decided according to legal principles, and that, therefore, there was no discretion to be exercised by his Honor.

"II. Because his Honor erred in holding that this was a case in which the Court 'might impose terms' in the granting of the relief asked, when he had already held that the defendant had not been legally served with process and the Court had no jurisdiction of his person, and when he had appeared in this motion for the purpose of objecting to the judgment on jurisdictional grounds, for that purpose and no other, it being submitted, on these accounts, his Honor was without jurisdiction to impose any terms on the defendant in granting the motion made before him.

"III. Because it was error in his Honor to hold that the defendant 'had led the said attorney (for plaintiff) to believe that he would either accept service or place himself within reach of service within the State,' when, it is submitted, there was no proof before his Honor to warrant such finding.

"IV. Because it was error on the part of his Honor, after having held that the attempted service of process on the defendant was void, that no jurisdiction had been acquired of his person, and that the judgment was void, and when the defendant had appeared for the purpose of objecting to the judgment on jurisdictional grounds, and for no other pur-

pose, to require the defendant to plead to the plaintiff's cause of action within forty days, as a condition to the granting of his motion, it being submitted that his Honor was without jurisdiction to so order, and that if invalid, the judgment should have been vacated without conditions.

"V. Because his Honor erred in decreeing that if defendant failed or refused to come in and answer or demur to the plaintiff's cause of action within forty days, 'that the said judgment stand confirmed;' it being submitted that his Honor was without jurisdiction so to decree, for the reasons that he had already held that the defendant had not been legally served with process in this case, that the judgment was void, and no jurisdiction had been acquired of the person of the defendant, and for the reason that he had appeared in this motion on jurisdictional grounds only, and had, therefore, not submitted himself to the jurisdiction of the Court.

"VI. Because it was an abuse of discretion on the part of his Honor to order that the judgment herein be confirmed, unless defendant pleaded or demurred to plaintiff's cause of action within forty days, when he had held that no jurisdiction had been acquired of the defendant to render said judgment, and the same was void, and when there had been no appearance waiving jurisdictional defects in the service of process.

"VII. Because his Honor was without jurisdiction to confirm an invalid judgment, when he had held that there had been no legal service of process, and when there had been no appearance waiving such service.

"VIII. Because his Honor should have held that no jurisdiction had ever been acquired of the defendant's person to render judgment against him, and that he had not waived legal service of process, but appeared before his Honor to object to the alleged judgment in this case on jurisdictional grounds, and on no other; that the judgment was, therefore, void, and he should have vacated said alleged judgment for that reason, and should have held that he was without juris-

diction to impose any terms upon the defendant without first obtaining jurisdiction of his person."

Within the time allowed by law the plaintiff respondent filed the following grounds to support such order of Judge Klugh:

"1. Because Judge Klugh should have held that the appearance before Judge Benet on a motion to stay the execution was a general appearance of the defendant in the action, and waived any defects in the original service if any existed.

"2. Because Judge Klugh should have held that the only object of a summons in this State being to give notice to a party that an action has been commenced against him, and the defendant having been duly notified, it was a good service, and was sufficient notice to give the Court jurisdiction of the person of the defendant.

"3. Because the presiding Judge having held that the defendant was a citizen of this State and county, should have held that he was subject to the laws of this State, and could be legally served with the summons in the city of Washington, D. C., and that he was legally served there."

Let us briefly state our conclusions first upon the exceptions of the appellant. It may be remarked that the appellant only complains of the order passed by the Circuit Judge, Judge Klugh, when he attempts to impose terms upon the appellant in avoiding the judgment pronounced by Judge Benet on 21 February, 1901. Was this imposition of terms by Judge Klugh proper? We think not. He had determined the fact that there was no legal service of the summons upon J. Altheus Johnson, and that the judgment pronounced by Judge Benet was void. If that judgment was void, how could Judge Klugh impart so much vitality in and to a void judgment as to require the said J. Altheus Johnson, in order to make such void judgment of no effect upon him, appear and demur or answer the complaint within forty days, or upon failure to do so, such void judgment should be vitalized into a judgment sound at law? We think the Circuit Judge, for the moment, of course,

overlooked the distinction between void and voidable judgments. The very record in the case showed that the Circuit Court never obtained jurisdiction of the defendant appellant; the record on its face disclosed the fact that the attempted service upon J. Altheus Johnson, while he was in his place of business beyond the limits of South Carolina, to wit: while he was in the city of Washington, District of Columbia, of the summons in this case was illegal. There had been no publication of notice as to the summons and none was claimed. There had been no attachment of his property in this State, and there had been no copy left at his residence in Due West, in Abbeville County, of this State. All that was done in the direction of a service of a summons upon J. Altheus Johnson was to ask him in Washington City, D. C., to accept service, which he refused to do, and afterwards handing him a copy of the summons and complaint. The appellant has pursued the proper practice in the State to have the Court of Common Pleas for Abbeville County to vacate this void judgment by making his motion upon his appearance for the purposes of the motion alone, and basing his motion upon the papers constituting the record, together with an affidavit. Chief Justice McIver, with great care in the case of *Crocker* v. *Allen,* 34 S. C., 452, has established such a procedure as proper, reviewing many authorities in this State and also some cases from the United States Supreme Court. This exception of appellant must be sustained.

We also think the language of the Circuit Judge as complained of in the second exception was too strong. All that Mr. Johnson is alleged to have written appears in his second letter to Mr. Graydon, where he states, in effect, that he hopes to be in South Carolina in the summer of 1900, at which time the matter of acceptance of service may be arranged. He did come to South Carolina in July of that year, but he does not seem to have met Mr. Graydon, though he was in Due West for several days. This exception is sustained.

The fourth exception has already been discussed. For the reason already advanced it is sustained.

The fifth, sixth, seventh and eighth exceptions are controlled by our previous finding; they are sustained.

Let us next consider the grounds advanced by the respondent to support Judge Klugh's order. In the first of these grounds stress is laid upon an appearance before Judge Benet to obtain a stay of execution by the appellant. No notice appears in Judge Klugh's order of any such matter. He has not passed upon it, but even if it was in the "Case," it would have no effect, for it was a part of the remedy under the law to obtain a hearing upon the validity of the judgment. We cannot sustain the first ground of the respondent.

As to the second ground, we must say that we cannot view a summons as only a notice, for it is far more than a mere notice. It is a means supplied by the law to the assertion of jurisdiction by the Court of Common Pleas of the person of the defendant. Unless it is waived, the law cannot possess jurisdiction of the person of defendant in a purely personal claim or action. This is overruled.

As to the third ground of respondents, we insist that the Circuit Judge did not err, as therein suggested. There was no personal service in this State nor was any copy left at his residence at Due West. This ground is overruled.

It is, therefore, adjudged by this Court, that so much of the order passed by Judge Klugh as sought to impose terms upon J. Altheus Johnson be reversed, but that so much of said order as decided that the judgment pronounced by Judge Benet on the 21st day of February, 1901, was void, be sustained.