13918

DYAR v. GEORGIA POWER CO.

(176 S. E., 711)

528

*Messrs. Colquitt, Parker, Troutman & Arkwright* and *Hughs & Hughs,* for appellant,

*Messrs. Herndon & Thompson,* for respondent, 

October 4, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Georgia Power Company is a foreign corporation. It has lands, dams, and reservoirs on Tugaloo River in Oconee County, S. C., used and useful in connection with its business of generating and disposing of electrical power. Its offices are in Atlanta, Ga., and its plants for the generation of electricity are in Georgia. The plaintiff, claiming that his lands, which are in Oconee County, below the defendant's dams and reservoirs on Tugaloo River, have been injured by overflow due to the negligent, willful, wanton, and grossly careless conduct of the defendant in the manner in which it has handled and released the water of the river which it has impounded, brings this action for damages.

The defendant appears solely for the purpose of moving to set aside the service of the summons and complaint for invalidity in the manner of service.

The motion was heard by Judge Ramage upon the summons, complaint, notices, affidavits, parol testimony taken in open Court, and on documentary evidence.

The service challenged was made by the service of the summons and complaint on W. C. Hughs, Esq., upon the claim that he was the attorney of the defendant; by the service of the summons and complaint upon B. M. Hall, Jr., upon the hypothesis that he was an agent of the defendant in this State. The service was attempted to be made by sending by mail copies of the summons and complaint to Mr. Shumate, vice-president of defendant company, with the request that he accept service, which Mr. Shumate refused to do. The service was attempted further to be made by publication of summons, and mailing copies of the summons and complaint to Mr. Wright, the secretary of the defendant company, at his office in Atlanta, Ga.

In a short order Judge Ramage overruled the motion to set aside the service. The cardinal feature of his order is embraced in the following sentence: "Considering all that has been done, and considering the word 'Attorney' in the Section cited, it appears to me that the Court has jurisdiction of the defendant."

It may be remarked here that the above reference to the word "Attorney" applies to its use in Section 434 of Vol. 1, Code 1932, which names those persons upon whom process may be served. Its relevancy will presently appear. The appeal to this Court is from that order.

It may be held to be established by the record that W. C. Hughs, upon whom process was served, is the attorney of the defendant in a number of actions brought against this defendant by persons who claim damages for overflow and injury to their lands, which they allege were caused in the same manner and by the same means as are set forth in the complaint in the present action. It is further established that at the time of the service of process on W. C. Hughs neither he, nor his firm of Hughs & Hughs, had been employed to represent defendant in this action, and that they are retained and appear for the sole purpose of presenting the motion to set aside the service.

It may be further held to be established that B. M. Hall, Jr., upon whom service of the summons and complaint in this action was made, is a member of the firm of B. M. Hall & Sons, civil, mining, and hydraulic engineers, with offices in Atlanta, Ga. That this firm was under contract with Georgia Power Company to survey certain of the lands in Oconee County lying on Tugaloo, which are involved in suits now pending in the Court of Common Pleas for Oconee County, S. C., with the view to obtain information to be used as evidence in the pending suits referred to, which are in no wise connected with the present action.

Attorneys for respondent state in their brief that they do not rely upon the service by mail attempted to be made on Mr. Shumate, nor do they rely upon the service by publication attempted to be made on Mr. Wright. We are therefore remitted to the determination of two questions:

Was the service on W. C. Hughs, Attorney, valid?

Was the service on B. M. Hall, Jr., valid; was B. M. Hall, Jr., at the time of the service on him, the agent of Georgia Power Company?

For convenient reference Section 434 of the Code, governing service of process, is here set out:

"The summons shall be served by delivering a copy thereof as follows:

"(1) If the suit be against a corporation, to the president or other head of the corporation, secretary, cashier, treasurer, a director or agent thereof. Service upon any person occupying an office or room in any railway station, and attending to and transacting therein any business of any railroad, shall be deemed service upon the corporation under the charter of which such railroad is authorized by law; and such person shall be deemed the agent of said corporation, notwithstanding he may claim to be the agent of any other person or corporation claiming to operate said railroad by virtue of any lease, contract or agreement.

"Such service can be made in respect to a foreign corporation only when it has property within the State, or the cause of action arose therein, or where such service shall be made in this State personally upon the president, cashier, treasurer, attorney or secretary, or any agent thereof. Provided, further, That in the case of domestic corporations service as effected under the terms of this section shall be effective and confer jurisdiction over any domestic corporation in any county where such domestic corporation shall own property and transact business regardless of whether or not such domestic corporation maintains an office or has agents in that county.

"(2) If against a minor under the age of fourteen years, to such minor personally, and also to his father, mother, or guardian; or, if there be none within the State, then to any person having the care and control of such minor, or with whom he shall reside, or in whose service he shall be employed.

"(3) If against a person judicially declared to be of unsound mind, or incapable of conducting his own affairs in consequence of habitual drunkenness, and for whom a committee or guardian has been appointed, to such committee or guardian, and to the defendant personally.

"(4) In all other cases to the defendant personally, or to any person of discretion residing at the residence or employed at the place of business of said defendant."

It will be noted that the section makes provision for the service of summons on foreign corporations "only when it has property within the State, or the cause of action arose therein, or where such service shall be made in this State personally upon the president, cashier, treasurer, attorney or secretary, or any agent thereof."

The Circuit Judge states in his order overruling the motion to set aside the service that considering all that has been done, "and considering the word 'Attorney' in the section cited," he thinks the Court has jurisdiction. From this ut-

terance it would appear that his Honor held that the service upon W. C. Hughs was a valid service and gave the Court jurisdiction.

Mr. Hughs' firm represented the defendant in other causes then pending, but had not been engaged in any manner in the present action, and was not authorized to appear for and represent the defendant therein until employed solely for the purpose to move to set aside the service.

In the case of *Reed v. Reed,* 19 S. C., 548, Mr. Reed in answer to the letter of plaintiff's counsel referred him to his counsel, Mr. Elliott, "as my solicitor in the matter to which you have referred." Certain propositions were made to Mr. Elliott which were declined by his client and plaintiff's counsel was informed that "the case must take the usual course." Thereafter, in the absence of Mr. Elliott, the summons and complaint were handed to his partner, who was ignorant of the fact that their client had instructed Mr. Elliott not to accept service. The papers were returned to plaintiff's counsel with this information, and were again sent to Mr. Elliott, who again returned them. Motion to set aside the service was made and refused. On appeal this Court said:

"There is no evidence whatever that any express authority was ever given by the defendant to attorneys to accept service for him, but, on the contrary, it distinctly appears that he had explicity refused to confer such authority upon his attorneys, and this would seem to be conclusive of the question. The Court could not obtain jurisdiction of the person of the defendant until he had been made a party in some one of the modes prescribed for that purpose. He had a perfect legal right to require that he should be legally served with process, and he alone could waive this legal right, and when he expressly refused so to do, certainly no one could lawfully assume to waive this right for him. It is manifest, therefore, that there was no legal service of the summons in this case and no waiver of such service by any one authorized so to do.

"The respondent, however, contends that although there was no express authority given by the defendant to his attorneys to acknowledge service, yet such authority could and must be implied from the letter of the defendant to the senior counsel for plaintiff, in which he refers that counsel 'to Wm. Elliott, Esq., as my solicitor in the matter to which you have referred.' In the first place, it would be going very far to imply an authority in the face of the undisputed fact that the defendant had expressly refused to confer such authority, and a Court would scarcely ever resort to such an implication, except, perhaps, upon the principle of estoppel to prevent manifest wrong or injustice, which, as we shall presently see, does not apply in this case.

"But in addition to this it is, to say the least of it, very doubtful whether the terms of that letter would authorize such an implication. That letter was in reply to one which manifestly looked to the very commendable purpose of adjusting the matters in dispute by private negotiation rather than by a suit at law, and the letter of defendant may well be regarded as referring to Mr. Elliott as the counsel who was authorized to represent him in such negotiation, and this Mr. Elliott did. But when the negotiations failed and Mr. Elliott communicated the result to Mr. Magrath, with the statement that 'his instructions are that the case must take the usual course,' the parties were placed at arms' length, and the plaintiff, if desirous of bringing an action, could only do so in the usual way, by service of a summons in some one of the modes prescribed by law, without regard to what had previously passed between the parties while engaged in the abortive attempt to arrange the matter by negotiation. We do not think, therefore, that the letter of the defendan to Mr. Magrath should be regarded as containing even an implied authority to Mr. Elliott to accept service for the defendant."

In the case of *Williams v. Hatcher*, 95 S. C., 49, 78 S. E., 615, 616, it appears that Hatcher, an attorney of Macon,

Ga., attended the Court at Spartanburg as attorney representing a client then being tried. While there on that mission, he was served with summons in an action by Williams. After the service of the summons, Messrs. John Gary Evans and De Pass and Sanders served notice on Williams' attorneys demanding a copy of the complaint. They stated in their notice that they appeared for that purpose only, and that they waived no rights but expressly reserved them. Service of the complaint was accepted by Hatcher's attorneys, the acceptance being coupled with this reservation: "Without waiving our rights as to appearance or otherwise as set forth in demand for copy complaint." Thereafter defendant's counsel served on plaintiff's counsel notice of motion to strike certain allegations from the complaint, and there was an agreement between counsel as to the time for hearing the motion, and time allowed to answer after the hearing. Subsequently the motion to strike was withdrawn, and counsel for defendant served on counsel for plaintiff notice of a motion to set aside the service of the summons on the ground that defendant was a nonresident, and was in the State solely for the purpose of attending Court as an attorney and witness in a pending suit, and was, therefore, not amenable to suit or process while in the State. The motion was granted by the Circuit Judge and the service set aside, and it was further held that the defendant had not voluntarily submitted himself to the jurisdiction of the Court. This judgment was affirmed by this Court.

To the same effect is the opinion of this Court in the case of *Breon v. Lumber Co.,* 83 S. C., 221, 65 S. E., 214, 24 L. R. A. (N. S.), 276, 137 Am. St. Rep., 803, which cites with approval the case of *Cooper v. Wyman,* 122 N. C., 786, 29 S. E., 947, 65 Am. St. Rep., 731.

"Service of process on a person who has ceased to represent a foreign corporation as its agent prior to the bringing of suit is entirely nugatory. The question must be determined by enquiring whether the agent was such at the

time the process was served, and not by his relation to the corporation at any other period, either anterior or subsequent." 21 R. C. L., 1357.

This ruling applies with more force to attorneys, who, except by express authority, have no power to accept service of a process which institutes a suit.

In the instant case Mr. W. C. Hughs represents this defendant in other actions growing out of the same cause of action, and pending in the Courts of Oconee County. But it would be a wide stretch of the statute regulating service of process to hold that for that reason other actions might be commenced against the defendant by entirely different parties, when Mr. Hughs had no express authority to accept such service and had not even been retained to defend such action. It is fallacious to say that authority to accept service of process in new actions brought by other persons against the same defendant may be inferred from the fact of the attorney's employment in other actions. Jurisdiction is absolutely essential to the maintenance of an action, and it can be obtained only by service of process in the manner prescribed by the law of the forum. There must be certainty that the person served is such an one as meets the requirements of the statute. There can be no uncertainty about it. Suppose, in the present case, that defendant had become dissatisfied with the conduct of its affairs by Mr. Hughs, and when the present action was begun had elected to employ other attorneys. It would hardly be contended that the service on Mr. Hughs was valid. Of course, it is understood that we are not implying that defendant is dissatisfied with Mr. Hughs.

"In the absence of a statute a general retainer does not authorize an attorney to accept service of process by which the Court acquires jurisdiction over a party." 6 C. J., 644, § 148.

See, also, *Sullivan v. Susong,* 40 S. C., 154, 18 S. E., 268, where the acceptance of service by an attorney was upheld

because it appeared that he had express authority to accept it, and because his action was subsequently ratified.

In the present case, when the summons was handed Mr. Hughs he informed the officer that he did not represent defendant in that action.

We must conclude that the attempted service on Mr. Hughs was invalid, and that the Court, thereby, acquired no jurisdiction of the defendant.

It is open to inference that counsel for plaintiff maintain that if the foreign corporation has property in this State, or the cause of action arose in this State, the Courts of this State would have jurisdiction of the corporation. We construe Section 434 to mean that if a foreign corporation has property in the State it may be brought into the jurisdiction of the Courts by the proper service of process upon it. Section 436 of the Code (1932) provides for the publication of summons, "where the defendant is a foreign corporation, has property within the State or the cause of action arose therein."

In the case of *Emanuel v. Ferris,* 63 S. C., 120, 41 S. E., 20, 25, this Court said: "We cannot sustain the first exception; for, after a careful consideration of the complaint and the laws of this State regulating the method of acquiring jurisdiction by our Courts of Common Pleas by the service of summons upon residents of other states, both of individuals and of corporations, we are satisfied that on personal actions, as distinguished from actions bottomed upon attachments and like provisional remedies in actions, service of summons, issuing out of our State Courts, cannot run beyond our borders. Since the cases of *Pennoyer v. Neff,* 95 U. S., 714, 24 L. Ed., 565; *Tillinghast v. Boston Lumber Co.,* 39 S. C., 484, 18 S. E., 120, 22 L. R. A., 49, and *Wren v. Johnson,* 62 S. C., 533, 40 S. E., 937, the service of summons in this case cannot be sustained. No law which a State has the right to enact can be active beyond the State's borders. When, therefore, stress is laid by the appellant upon

Section 156 of our Code of Procedure, she complains of matter from which our State laws cannot afford relief. As before suggested, the principle may be thus stated: The Courts of this State can regulate the citizens or residents within her borders. Thus she can require all persons within her borders to abide by and perform the judgment of the Courts. So, too, in regard to property, real and personal, situate within the territorial limits of the State, even when such property is owned by persons, natural or artificial, residing beyond the limits of our State, the judgments of our Courts can afford full relief, so far as the said property, real and personal, situated within the State borders, is concerned. Beyond this judgments of our State Courts cannot go. These principles are firmly established in the adjudications we have before cited. The Chief Justice of this Court, in the case of *Tillinghast v. Boston Lumber Co., supra,* has with great care and ability, after pointing out the decisions of the United States Supreme Court of *Pennoyer v. Neff, supra; Galpin v. Page,* 18 Wall., 367, 21 L. Ed., 959; *St. Clair v. Cox,* 106 U. S., 350, 1 S. Ct., 354, 27 L. Ed., 222; *Mexican Central Railway v. Pinkney,* 149 U. S., 194, 13 S. Ct., 859, 37 L. Ed., 699; *Wilson v. Seligman,* 144 U. S., 44, 12 S. Ct., 541, 36 L. Ed., 338—remarked: "These being the well-settled principles applicable to a case like the one now under consideration, established by the Supreme Court of the United States, a tribunal which is invested with final jurisdiction in controversies between citizens of different states, it seems to us that we are bound, if practicable, to put such a construction upon the provisions of our Code above referred to (being Sections 155 and 156), as will bring it into conformity with such principles. This, we think, can be done by construing the above-mentioned provisions of our Code as applying only to cases in which a warrant of attachment has been issued, or to some other proceeding *in rem,* or in the nature of a proceeding *in rem,* and not to cases of mere personal actions in which only a personal judgment can

be obtained. * * * We are, therefore, compelled to construe the provisions of the Code above referred to, providing for the mode of making a nonresident (defendant) a party to an action, as applying only to such actions as may be regarded as a proceeding *in rem,* and not applying to merely personal actions, in which only a personal judgment is sought or can be obtained.' "

In the case of *Sanders v. D. Landreth Seed Co.,* 91 S. C., 26, 74 S. E., 120, Mr. Justice Woods said: "This appeal is from an order refusing to set aside the alleged service of a summons and complaint on the defendant, a foreign corporation. The service was made by publication and personal service out of the State, and the appeal depends on whether the attachment issued against the property of the defendant was illegal and void, for without attachment a foreign corporation cannot be forced to submit to the jurisdiction of the Courts of the State. *Emanuel v. Ferris,* 63 S. C., 104, 41 S. E., 20; *Breon v. Miller Lumber Co.,* 83 S. C., 221, 65 S. E., 214, 24 L. R. A. (N. S.), 276, 137 Am. St. Rep., 803."

We come now to the consideration of a more serious question.

In order that the matter to be determined be correctly and directly before us, let us briefly recapitulate the facts pertaining to it.

There are pending in the Court of Common Pleas for Oconee County a number of cases brought by owners of land along Tugaloo River to recover damages to their lands which they allege have been caused by the overflow of the waters of Tugaloo River, which have been impounded by defendant in reservoirs above the lands of plaintiffs. The suit involved in the matter now before us has no connection with these other various suits. It is admitted, however, that plaintiff's lands in the present suit also lie along Tugaloo River, and it is also alleged that the damages thereto were caused by the overflow from the same sources. Before the

commencement of the present action, the defendant in this action, and who is defendant in the other actions above referred to, employed the firm of B. M. Hall & Sons, who are civil, mining, and hydraulic engineers, with their offices in Atlanta, Ga., to examine the lands of the plaintiffs in the suits already on the docket of the Courts in order to gather information to be used by them as expert witnesses in the pending cases. This work was intrusted to B. M. Hall, Jr., a member of the firm. He was in the performance of this work in Oconee County, when, on October 12, 1932, he was served with the summons and complaint in the present case.

These questions arise:

Is the service on B. M. Hall, Jr., invalid for the reason that Hall was gathering information to be used as a witness in cases pending between this defendant and plaintiffs other than the plaintiff in this case, and is, therefore, exempt from suit and service while in this State?

Is the defendant a foreign corporation doing business in this State?

Was B. M. Hall, Jr., on October 12, 1932, such agent of defendant, a foreign corporation, as made valid the service of summons, or to confer jurisdiction of the defendant in the Courts of this State?

We have heretofore shown that a citizen of another state within the borders of this State for the purpose of attending Court as an attorney, or witness, is immune from suit or service of process while here.

Does B. M. Hall, Jr., come within the protection of this immunity?

We think it is established law as thus stated in *Durst v. Tautges, Wilder & McDonald* (C. C. A.), 44 F. (2d), 507, 508, 71 A. L. R., 1394, that: "From the very earliest times the rule of law has prevailed, at least in all English speaking jurisdictions, that a suitor or witness is exempt from service of process while without the jurisdiction of his residence for the purpose of attending Court

in an action to which he is a party, or in which he is to be sworn as a witness."

It appears from the affidavit of Mr. F. E. Shumate, vice-president of defendant corporation, that B. M. Hall, Jr., when served with process in this case, "was engaged in making investigation for the purpose of bringing information into Court to testify as an expert witness, etc."

Court, for the trial of the cases for which Hall was engaged to gather information, was not in session; Hall was not in this jurisdiction in the capacity of a witness, then, to testify. We think it would be extending the doctrine of immunity from service of process too far to hold that he was exempt.

Was the defendant doing business in this State within the meaning of the law, and was B. M. Hall, Jr., such agent of defendant as would make valid service which will give the Courts of this State jurisdiction of the foreign corporation?

These are questions the answers to which so largely depend upon the facts of each case that no general rule can be formulated to fit every case.

This whole subject was ably and elaborately discussed by Judge Oxner in the case of *State v. W. T. Rawleigh Co.*, whose decree, on appeal, was affirmed and ordered reported as the judgment of the Court. See 172 S. C., 415, 174 S. E., 385, 389.

In that case it appears that W. T. Rawleigh Company is a foreign corporation which had sold merchandise to B. C. Bryan of Edgefield County, S. C., under a written contract by which the merchandise became the sole property of Bryan when shipped to him, f. o. b., from a point without the State. The State brought action against the W. T. Rawleigh Company, to collect certain penalties for failing to comply with the statutes of the State regulating the duty of foreign corporations doing business within the State. Service of summons and complaint was attempted to be made by serving them upon B. C. Bryan as the agent of W. T. Rawleigh Company. It

objected to the jurisdiction of the Court, and moved to vacate and set aside the service on the grounds that the W. T. Rawleigh Company is a foreign corporation, that it is not doing business in this State, that it owns no property in this State, and that B. C. Bryan, upon whom service was made, is not its agent.

The Circuit Judge finds that admitted facts are: That defendant is a foreign corporation; that it sells to its customers under written contracts, which make the purchasers, called "Dealers," sole owners of the goods bought; that the "Seller" furnishes the "Dealer" with order blanks and "Weekly Report" blanks to be used in making reports of progress to the company; the weekly report blanks state that the dealer owns and manages his own business, the company gives no orders or directions, but most dealers follow the service methods recommended by the company. It appears from the written contract that if and when business relations are terminated between the company and the dealer, the company agrees to purchase whatever of the goods bought from it which the dealer then has on hand.

The plaintiff contended that the record established certain other facts, which, taken with the admitted facts, sustain the validity of the service. The additional facts thus depended on by plaintiff are: That the company allotted territory in the State to various "dealers" to whom it sold goods; the contract is silent on this subject, but the paper sent out by the company entitled "Sales Estimate and Location Recommended" contains suggestions as to such territory. There was evidence by plaintiff that dealers were allotted territory and not allowed to leave it. For the company it was stated that this was in the interest of the dealers. Another fact depended on by plaintiff is that dealers are authorized to procure other dealers for the company, and are paid for finding and recommending such prospective dealers. One of the papers sent out by the company contains the statement that it is now paying to its old customers about $80,000.00 a

year for securing such new customers. The contract is silent on this subject. It does not appear from the reported case that B. C. Bryan, upon whom the process was served, was paid anything for such service. It is held in the case that these services were voluntary on the part of the dealer. It is urged further for the plaintiff that the dealer is required to furnish a bond for the faithful performance of the contract; but this applies only where the dealer desires to buy on credit. It does not appear that B. C. Bryan gave such bond. It is urged further that the company furnished advertising matter to the dealer who was instructed to distribute them. The decree of Judge Oxner holds that the dealers were not "instructed" to deliver the advertising matter but were advised to do so. It is also contended that the company offered to sell to dealers auto bodies and equipment for cash or on credit; and the Court finds this to be a fact. It is further contended that the dealers did not take orders for their goods and deliver them subsequently, but sold them as they travelled about their territory for cash or credit. It is urged that the company directed its dealers to have a regular line of customers. The Court finds that the company did not "direct" this, but did advise it. It is again urged that the company advised the dealers how to sell their goods and this is found to be true; and lastly it is contended that the company furnished a book of instructions to its dealers, entitled "Rawleigh's Methods." It appears that the dealer pays $2.50 for this book.

The decree of Judge Oxner, which was adopted in the main by this Court, states:

"After the most careful consideration of the facts presented and study of the numerous authorities relied upon by both parties and the briefs submitted, I am entirely satisfied that the service of the summons and complaint in this case should be set aside and vacated, and the complaint herein dismissed, for the reasons that the W. T. Rawleigh Company is a foreign corporation and was not doing business in

the state at the time of the attempted service, and the said
B. C. Bryan was not its agent, and it owned no property, real
or personal, in this State. * * *

"It may be conceded that the statutes of this state pro-
viding for service upon foreign corporations are sufficiently
complied with when any foreign corporation is shown to be
'doing business' in the state and when 'any agent' of such
corporation is served with process in this state. * * *

"It is fundamental that in order to obtain jurisdiction of
a foreign corporation so as to render a judgment in per-
sonam against it, at least two things must concur: First, the
corporation must be doing business in the state. *Toledo Rail-
ways & Light Co. v. Hill,* 244 U. S., 49, 37 S. Ct., 591, 61
L. Ed., 982; *Riverside Cotton Mills v. Menefee,* 237 U. S.,
189, 35 S. Ct., 579, 59 L. Ed., 910; *International Harvester
Co. v. Kentucky,* 234 U. S., 579, 34 S. Ct., 944, 58 L. Ed.,
1479; *Green v. Railway Co.,* 205 U. S., 530, 27 S. Ct., 595,
51 L. Ed., 916.

"And, second, it is necessary that there be service of proc-
ess upon a duly authorized officer or agent of the corpora-
tion within the state, under the statutes authorizing and
providing for such service. *Cannon Mfg. Co. v. Cudahy
Packing Co.,* 267 U. S., 333, 45 S. Ct., 250, 69 L. Ed., 634;
*St. Louis Southwestern Railway Co. v. Alexander,* 227 U.
S., 218, 33 S. Ct., 245, 57 L. Ed., 486, Ann. Cas., 1915-B,
77; *St. Clair v. Cox,* 106 U. S., 350, 1 S. Ct., 354, 27 L.
Ed., 222; *Golden v. Wheel Co.* (D. C.), 252 F., 904; *Michi-
gan Aluminum Foundry Co. v. Aluminum Castings Co.* (C.
C.), 190 F., 879; *Philadelphia & R. Railway Co. v. Mc-
Kibbin,* 243 U. S., 264, 37 S. Ct., 280, 61 L. Ed., 710;
*People's Tobacco Co. v. American Tobacco Co.,* 246 U. S.,
79, 38 S. Ct., 233, 62 L. Ed., 587, Ann. Cas., 1918-C, 537;
*Davega, Inc., v. Lincoln Furniture Co.* (C. C. A.), 29 F.
(2d), 164.

"The United States Supreme Court is the final arbiter up-
on both of these questions. *Abbeville Electric Co. v. Supply*

Co., 61 S. C., 371, 39 S. E., 559, 55 L. R. A., 146, 85 Am.
St. Rep., 890; *McSwain v. Grain Provision Co.*, 93 S. C.,
103, 76 S. E., 117, Ann. Cas., 1914-D, 981; *Chipman v.
Jeffery*, 251 U. S., 373, 40 S. Ct., 172, 64 L. Ed., 314, and
cases cited therein; 14-A Corpus Juris, 1372, and cases
cited; *Thurman v. C. M. & St. Paul Ry. Co.*, 254 Mass.,
569, 151 N. E., 63, 46 A. L. R., 566, and numerous cases
cited in the note; *Conley v. Mathieson Alkali Works*, 190
U. S., 406, 23 S. Ct., 728, 47 L. Ed., 1113; *Barrow v. Kane*,
170 U. S., 100, 18 S. Ct., 526, 42 L. Ed., 964. * * *

"An agent is one appointed by a principal as his representative and to whom the principal confides the management of some business to be transacted in the principal's name, or on his account, and who brings about or effects legal relationships between the principal and third parties. 21 R. C. L., 817.

"In *Jenkins v. Bridge Co.*, 73 S. C., 528, 53 S. E., 991, 992, the Supreme Court said:

" 'An agent is generally defined as a person who acts on behalf of another person who is his principal. While in practical affairs the relation assumes so many phases, it is often quite difficult to apply the definition, it is certainly necessary to constitute agency that there should be some kind of representation of the principal by virtue of authority conferred by him. Authority to contract is sufficient to constitute agency under this statute. *Gross v. Nichols*, 72 Iowa, 239, 33 N. W., 653; *Norton v. Berlin Bridge Co.*, 51 N. J. Law, 442, 17 A., 1079; *Memphis & C. Packet Co. v. Pikey*, 142 Ind., 304, 40 N. E., 527. The claim of agency based on any other authority short of power to contract it is said by high authority has rarely been maintained, and certainly it should be allowed with great caution. *Moore v. Freeman's Nat. Bank*, 92 N. C., 590; *Conn. M. Life Ins. Co. v. Spratley*, 172 U. S., 602, 19 S. Ct., 308, 43 L. Ed., 569; *Carpenter v. Lumber Co.* (C. C.), 158 F., 697.

" 'The agent must be one having in fact a representative capacity and derivative authority, and not one created by

construction or implication, contrary to the intention of the parties.' *Doe v. Springfield, etc., Mfg. Co.,* 104 F., 684, 687 (C. C. A., 9th Cir.).

"The reason that has led the federal courts to hold that the person served must be an agent in fact and not one by implication or estoppel, seems to be that in dealing with service of process upon an agent, the court is confronted with the question whether due process of law is being accorded the defendant. Inasmuch as service of process goes to the jurisdiction of the court over the person, the word 'agent' as used in the statutes must be so construed as to conform to the principles of natural justice, so that the service will constitute due process of law. 21 R. C. L., 1351."

It would seem that there is in the *Rawleigh case* far more testimony from which it might be deduced that the company was doing business in this State, and that Bryan was its agent, than there is in the present case that Georgia Power Company is doing business in this State, and that B. M. Hall, Jr., is its agent, upon whom process may be legally served to bring the power company within the jurisdiction of the Courts of this State.

"While the decisions are not uniform, the decided weight of authority is in favor of the proposition that so long as a corporation confines its operations to the state in which it was created, it cannot be sued in a state where it has no office, or transacts no business, by serving process on its president or other officer or agent, when temporarily or casually present within such state."

"The mere ownership of lands within the state will not take the case out of this principle." 21 R. C. L., 1358, § 108, note 6, citing *Territory of New Mexico ex rel. Caledonian Coal Co. v. Baker,* 196 U. S., 432, 25 S. Ct., 375, 49 L. Ed., 540.

In the present case the Georgia Power Company owns property in this State consisting of lands, dams, and reservoirs; its generating plants are all in Georgia, and its offices,

from which are conducted the operations of its business, are in the City of Atlanta, Ga. It has no offices or place of business in this State. B. M. Hall, Jr., on whom process was served, is not one of its officers or agents, but is a member of an engineering firm with offices in Atlanta, Ga., and was in this State casually for the purpose of making surveys of lands not involved in the present action.

In *Rosenberg Bros. & Co., Inc., v. Curtis Brown Co.,* reported in 260 U. S., 516, 43 S. Ct., 170, 171, 67 L. Ed., 372, it appears that plaintiffs in error were merchants in Tulsa, Okla.; its president went to New York City to buy goods for its shop in Tulsa, and while there was served with summons in a suit by Curtis Brown Company. Mr. Justice Brandeis, delivering the opinion of the United States Supreme Court, said: "The sole question for decision is whether, at the time of the service of process, defendant (Rosenberg Bros. & Co., Inc.), was doing business within the state of New York in such manner and to such extent as to warrant the inference that it was present there. *Philadelphia & R. R. Co. v. McKibbin,* 243 U. S., 264, 265, 37 S. Ct., 280, 61 L. Ed., 710, 711. The District Court found that it was not. That decision was clearly correct."

In the case of *Samuel Lumiere v. Mae Edna Wilder, Inc.,* 261 U. S., 174, 43 S. Ct., 312, 313, 67 L. Ed., 596, Mr. Justice Brandeis for the Court said: "That jurisdiction over a corporation cannot be acquired in a district in which it has no place of business and is not found, merely by serving process upon an executive officer temporarily therein, even if he is there on business of the company, has been settled." Citing *Philadelphia & R. R. Co. v. McKibbin,* and *Rosenberg Bros. & Co. v. Curtis Brown Co., supra,* and *Bank of America v. Whitney Cent. Nat. Bank,* 261 U. S., 171, 43 S. Ct., 311, 67 L. Ed., 594.

In the case of *Toledo Railways & Light Co. v. Walter Hill et al.,* 244 U. S., 49, 37 S. Ct., 591, 593, 61 L. Ed., 982, it appears that plaintiff in error was an Ohio corpora-

tion, which had issued certain bonds which were made payable in New York. Defendants in error brought suit against plaintiff in error in New York. The service of process was made upon a director and vice-president of the Ohio company residing in New York. Motion to vacate service was denied. The case went by appeal to the Supreme Court of the United States. Mr. Chief Justice White delivered the opinion of the Court:

"The reason which controlled the court below, and the sole contention here relied upon, therefore, was and is that the provision for the payment of the bonds and coupons at an office in the city of New York constituted a doing of business in New York so as to afford jurisdiction there; and that such result continued to operate years after the office for such purpose had ceased to exist, upon the ground that, for the purpose of jurisdiction over the corporation, it must be conclusively presumed to have continued to maintain an office in the City of New York for the purpose stated. But we think from either point of view the contention is without merit: the first, because the mere provision for a place of payment in the city of New York of the bonds and the coupons annexed to them, at their maturity, and their payment at such place, was in no true sense the carrying on by the corporation in New York of the business which it was chartered to carry on, however much it may have been an agreement by the corporation to pay in New York an obligation resulting from the carrying on by it of its business in the state of Ohio. And this view necessarily disposes of the proposition in the second aspect, since the indulging in the fiction of the existence of an office for the payment of coupons could not produce an effect greater than that which could be produced by the real existence of the office.

"So far as concerns the capacity of the person upon whom the summons was served irrespective of the doing of business by the corporation in the state, we do not expressly notice the various contentions by which, under such a view,

jurisdiction is sought to be supported, but content ourselves with saying that we think they are all plainly without merit."

"A statute directing service of process on the agent of a foreign corporation conducting its business in the district clearly contemplates cases in which the corporation has an established place of business in the district with agents or persons employed to conduct it." Note to *Foster v. Betcher Lumber Co.,* a South Dakota case reported in 23 L. R. A., 490, and citing *Dallas v. Atlantic, M. & O. R. Co.,* 2 MacArthur (9 D. C.), 146.

In the case of *Jenkins v. Penn Bridge Co.,* 73 S. C., 526, 53 S. E., 991, 992, the judgment of the lower Court finding that Rowley as timekeeper was an agent of the bridge company was affirmed by an evenly divided Court. Mr. Justice Woods, who wrote one opinion concurred in by Chief Justice Pope, stated certain propositions of law which are not controverted by the opinion written by Mr. Justice Jones, and concurred in by Mr. Justice Gary. Mr. Justice Woods said: "The object of service of the summons is not only to give notice to the defendant of the pendency of a suit against him, but to bring him under the jurisdiction of the Court." He said further: "An agent is generally defined as a person who acts on behalf of another person who is his principal. While in practical affairs the relation assumes so many phases, it is often quite difficult to apply the definition, it is certainly necessary to constitute agency that there should be some kind of representation of the principal by virtue of authority conferred by him." He quotes thus from the case of *Mulhearn v. Press Pub. Co.,* 53 N. J. Law, 150, 20 A., 760: "The line between those who represent and those who do not represent a foreign corporation for the purposes of this act cannot be defined by a formula. But it was never intended that every servant who happened to do some act in this state for a foreign corporation represented the company. Service upon a carter who was sent across the ferry

into this state for a load of merchandise belonging to a foreign corporation would be absurd. These persons have little, if any, more representative character than the carter." Citing *Connecticut Mutual Life Ins. Co. v. Spratley,* 172 U. S. 602, 19 S. Ct., 308, 43 L. Ed., 569, Rose's Notes, 3 supplement, 993; *Abbeville E. L. & P. Co. v. Western E. S. Co.,* 61 S. C., 361, 39 S. E., 559, 55 L. R. A., 146, 85 Am. St. Rep., 890.

The service was upheld in *Abbeville E. L. & P. Co. v. Western E. S. Co.,* 61 S. C., 361, 39 S. E., 559, 55 L. R. A., 146, 85 Am. St. Rep., 890, because it was made upon a travelling salesman of the foreign corporation who was sent into the state by the corporation for the express purpose of investigating the disputed claim and with authority to negotiate for its settlement.

In the case of *Sellers v. Home Fertilizer Co.,* 76 S. C., 343, 56 S. E., 978, the action was one to set aside a judgment; the service was upon the attorney who had obtained the judgment, which was still in his control for the purpose of collection. Properly the service was held to be good.

In the case of *Richardson v. Frigidaire Corporation et al.,* 168 S. C., 473, 167 S. E., 681, the service upon J. R. Little was upheld because it was shown conclusively that the corporation was doing business in this State through J. R. Little as its agent, who maintains an office in Richland County, S. C., where the action was brought..

In the case of *McIntyre v. United Five Cent & Ten Cent Stores, Inc.,* 171 S. C., 273, 172 S. E., 220, the service was properly upheld because the service was made upon the manager of one of the defendant stores at Allendale, within this State.

The order of his Honor, Judge Ramage, which is appealed from, states: "Considering all that has been done and considering the word 'Attorney' in the section cited, it appears to me that the Court has jurisdiction of the defendant."

There is not a particle of evidence that W. C. Hughs was the general attorney of defendant, or that he was employed to represent it in this action. There is evidence to the contrary. The Circuit Judge does not find nor hold, that the defendant corporation was doing business in this State, nor that B. M. Hall, Jr., was its agent in such capacity as to make service upon him valid.

The judgment of this Court is that the service attempted to be made in any of the methods set out in the record is invalid.

Accordingly, it is set aside and vacated, and the order appealed from is reversed.

MR. JUSTICE CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER dissent.

MR. JUSTICE STABLER (dissenting): This is an appeal from an order of his Honor, Judge Ramage, refusing to set aside service of process on the defendant. The plaintiff, a resident of Oconee County, owns certain lands described in the complaint bordering on the Tugaloo River; the company, a foreign corporation, with plants in Georgia for the generation of electric power, has dams and reservoirs on the Tugaloo in this State, which are used and useful in connection with such business. The plaintiff alleges that his lands, which are below the defendant's dams and reservoirs, have been injured by overflow, due to the careless and willful conduct of the company in handling and releasing the waters impounded by it; and brings this action for damages claimed to have been sustained thereby.

The summons and complaint were served on W. C. Hughs, Esq., who at the time was representing the defendant as its attorney in several cases pending in the Courts of Oconee County; and also on B. M. Hall, Jr., who was engaged in making a survey of lands in that county for the

defendant, in an effort to obtain information to be used by him as an expert witness in suits in which the company was then and there involved. Upon due notice to the plaintiff, the defendant made special appearance for the purpose of moving to set aside the service on the following grounds: (1) That the company was not doing business in South Carolina; and (2) that the persons served were not the agents or representatives of the defendant. The motion was heard upon the summons and complaint, notices, certified copies of affidavits and other documentary evidence, and the testimony of several witnesses. In an order dated January 12, 1933, Judge Ramage held that the Court had jurisdiction of the defendant, "considering all that has been done."

It is a well-established rule that findings of fact by the Circuit Judge in a law case are not subject to review by the Supreme Court, unless entirely unsupported by the evidence. In *Lipe v. Railway Co.,* 123 S. C., 515, 116 S. E., 101, 30 A. L. R., 248, following former decisions, it was held that "a conclusion as to either of the points indicated (similar to the questions here made) necessarily involves the determination of a question of mixed law and fact, but the result of such determination by the Circuit Judge is essentially a finding of fact which this Court has no power to review, unless wholly unsupported by evidence or manifestly influenced or controlled by error of law." In *State ex rel. Kerns v. Insurance Co.,* 168 S. C., 516, 167 S. E., 833, the rule was quoted with approval and held to be controlling. Also, in the later case of *State v. W. T. Rawleigh Co.,* 172 S. C., 415, 174 S. E., 385, although a different conclusion might have been reached by the Circuit Judge, as there was some evidence to sustain his findings of fact, it was declared that an affirmance of his decree was proper under the rule stated. See, also, *Bass v. American Products, etc., Corporation,* 124 S. C., 346, 117 S. E., 594, 30 A. L. R., 168; *Singletary v. Seed Co.,* 145 S. C., 539, 143 S. E., 269; and *State v. Insurance Co.,* 168 S. C., 516, 167 S. E., 833.

In the case at bar, we have examined with care the affidavits and other documents which were before Judge Ramage, and we cannot say that the conclusion reached by him, that Hall at the time he was served was acting as an agent or representative of the company, is wholly without evidence to sustain it, or was based upon an erroneous conception or application of the law. It may be true that he was not acting as the defendant's general agent at the time, but, as stated by Mr. Justice Jones in *Jenkins v. Penn Bridge Co., 73 S. C.,* 526, 53 S. E., 991, 993, "the statute makes service on 'any agent' of a foreign corporation sufficient. The statute, therefore, does not require that the agent shall be general, but is complied with by a service upon an agent having limited authority to represent his principal."

The suggestion that Judge Ramage made no finding that the service on Hall, his name not being mentioned in the order, gave to the Court jurisdiction of the defendant, is clearly without merit. The phrase used, "considering all that has been done," unquestionably included the consideration of all the evidence pertaining to the matter; and hence, as nothing appears to the contrary, it is clear that such service was a controlling factor in the conclusion reached.

The order appealed from should be affirmed.

Mr. Chief Justice Blease concurs.