13930

FORBES v. KINGAN & CO.

(176 S. E., 880)

*Mr. Capers G. Barr,* for appellant,

*Messrs. Thomas J. Karnes* and *H. L. Smith,* for respondent,

October 30, 1934.

The opinion of the Court was delivered by MR. C. T. GRAYDON, ACTING ASSOCIATE JUSTICE.

This action was commenced on the 17th day of May, 1933, by the service of a summons and complaint upon one E. M. Hirsch, a resident of Kingstree, County of Williamsburg, in the State of South Carolina, upon the theory that E. M. Hirsch was an agent of the defendant, Kingan & Co.

The complaint alleged in part that the defendant, Kingan & Co., was engaged in the business of selling food for human consumption, and that among its products was one known as "Frankfurt Style Sausage" packaged in ten-pound cartons and sold to various retail dealers in and about the County of Georgetown. It is further alleged that some time prior to the 18th of April, 1933, the defendant sold to the Great Atlantic & Pacific Tea Company a carton of said product and that in turn the same was sold to one S. Joseph who operated a "hot dog" stand at Georgetown, and that on April 18, 1932, the plaintiff purchased one of said sausages in a sandwich, and that the same had a brass screw concealed in it. As a result of the screw being hidden in the sausage, the plaintiff alleged that a large portion of one of his jaw teeth was scaled or cracked off, and that he was made sick, caused to become nauseated, and that he suffered for several months as a result thereof, demanding damages in the sum of $2,500.00. The complaint alleged, on information and belief, in Paragraph 2, that the defendant had a resident representative in the City of Kingstree, County of Williamsburg, in the State of South Carolina, and this complaint was duly verified on oath of the plaintiff.

Attached to the complaint was the usual summons required in such cases, and the affidavit of service is indorsed upon the wrapper of the summons and complaint as required by law.

The service was made by one J. J. Scurry and is in usual form, containing the following pertinent part to this inquiry: "That he served the Summons and Complaint in the action on the defendant by delivering to Eugene M. Hirsch, the agent, salesman and representative of the said defendant Kingan and Company, and leaving with said Eugene M. Hirsch, copies of the same at Georgetown, County of Georgetown, and State aforesaid on the 17th day of May, 1933."

The affidavit of Mr. Hirsch shows that he immediately forwarded the same to the branch office of Kingan & Co., in the City of Richmond, Va., and on May 21, 1933, Thomas J. Karnes, Esq., attorney for the plaintiff, received a letter from Kingan & Co., *which acknowledges receipt of the complaint* but in no wise accepts service thereof, and gives as a reason for not considering the complaint the following: "As our records do not show that we shipped the A. & P. Store any of our sausage during the period mentioned, we most respectfully decline the claim."

It will be seen from the above that, although Kingan & Co. had due and timely notice, whether legal or otherwise, of the existence of a claim against it in South Carolina and the filing of a summons and complaint, no effort was made by it to do anything with reference to the matter from May, 1933, until April, 1934, as hereinafter noted.

In February, 1934, there having been no motion, demurrer, answer, or other notice of appearance by the defendant or in its behalf, default judgment was taken in accordance with law. The question of the amount of damage was submitted to a jury before Judge Grimball, and resulted in a verdict for the sum of $500.00 and costs. This verdict was duly entered in the office of the clerk of Court for Georgetown County on the 20th day of February, 1934, as Judgment Roll No. 3616.

The latter part of April, 1934, a petition was served by the attorneys for the appellant herein, appearing solely for the purpose of making a motion before Judge Grimball to vacate and set aside the judgment above referred to on the ground that no proper service had been made upon the defendant in accordance with law. The exact date of the filing of this petition is not shown, but the affidavits appended thereto are dated the 26th of April, 1934, and the return to the petition is dated April 28, 1934. Numerous affidavits were filed on behalf of both the plaintiff and Kingan & Co., and some issues of fact were raised. The matter was heard

before Judge Grimball and he filed his order dated May 17, 1934, in which he refused to vacate the judgment as demanded in the petition of Kingan & Co.

The entire issue in the case revolves around the question as to whether or not E. M. Hirsch was such *an agent* of the defendant, Kingan & Co., as service could be made upon.

The provision of the Code which governs service of this kind is found in Section 434 of the Code of Laws of 1932, Paragraph 1. It is useless to consider the first part of said paragraph, as the inquiry here is confined to the right to serve a foreign corporation. This part of the section refers to several conditions with reference to foreign corporations which are as follows: (1) When the foreign corporation has property within the State; (2) when the cause of action arose within the State; (3) where such service shall be made in this state personally upon the president, cashier, treasurer, attorney, or secretary or *any agent thereof*.

This Act formerly read "any resident agent thereof" (Code Civ. Proc. [Rev. St. 1893] § 155), but in the year 1889 (23 St. at Large, p. 42) the Legislature saw fit to strike out the word "resident" and leave the section as it now reads. It was the purpose and intention of the Legislature, evidently, to enlarge the right to serve foreign corporations and not to further limit it.

Several cases will be found under the old section where the word "resident" appears. The case of *Hester v. Rasin Fertilizer Co.*, 33 S. C., 609, 12 S. E., 563, is a case decided under the old section. The service was made upon one D. L. Roberts and it was *not contended* that he was a resident agent of the defendant corporation. Mr. Justice McIver, speaking for the Court, says that, as the term "resident agent" is in the statute and it appears that Roberts was not such a resident agent, and that the defendant company owned no property in the State, and that the cause of action did not arise in the State, the decree of the Circuit Judge, vacating the service, should be affirmed.

The case of *Pollock v. Building & Loan Association,* 48 S. C., 65, 25 S. E., 977, 59 Am. St. Rep., 695, is another case under the old provision of the statute, but in the *Pollock case* it appeared that one A. C. Pollock was a resident agent transacting business for the defendant, and this service was held to be valid.

The next case considered is that of *Abbeville Electric Co. v. Western Electrical Supply Co.,* 61 S. C., 361, 39 S. E., 559, 55 L. R. A., 146, 85 Am. St. Rep., 890, in which the new provision of the Code is considered for the first time where there is a contest as to the question of agency for purpose of service. In this case service was made on the defendant, Western Electric Company, through one of its salesmen, George F. Schminke, who was in Abbeville at the time. Judge Benet held that this service was not sufficient, but the Supreme Court, Mr. Justice McIver speaking, holds that under the new enlarged provision of the statute the service upon this agent was sufficient, and reversed the judgment of the lower Court. This last case was reconsidered at 66 S. C., 328, 44 S. E., 952, where the defendant, Western Electric Company, demurred to the complaint on the ground that the Court was without jurisdiction on the issue of service, and Hon. Leroy F. Youmans, Acting Associate Justice in the absence of Mr. Chief Justice McIver, indisposed, held that the decision of the Court in 61 S. C. was *res adjudicata* in the matter. The Western Electric Company attempted to appeal to the United States Supreme Court, and the United States Supreme Court held that, as the matter had been heard by the South Carolina Supreme Court and final judgment rendered thereon, questions raised upon a second appeal would not be considered by the United States Supreme Court, and this Court dismissed the case on this jurisdictional question. *Western Electrical Supply Co. v. Abbeville Electric Light & Power Co.,* 197 U. S., 299, 25 Ct., 481, 49 L. Ed., 765.

A later case considered shows clearly the tendency of the Court to broaden out this right of service under the amended Act, and this case of *Jenkins v. Penn Bridge Co.*, 73 S. C., 526, 53 S. E., 991, 993, affirms the order of Judge Memminger, holding that service upon a timekeeper of a foreign corporation doing a piece of construction work in South Carolina is good service. This last decision is by a divided Court, but it has been followed since that time as authority for this proposition. In speaking of the question of service in this case, the majority opinion of the Court says: "The test of agency is not the power to make a contract binding the employer. Such power shows agency, but agency may also be shown by the fact that a person represents the master in some one or more of his relations to others, even though he may not have power to contract. The statute makes service on 'any agent' of a foreign corporation sufficient. The statute, therefore, does not require that the agent shall be general, but is complied with by a service upon an agent having limited authority to represent his principal."

This tendency of the Court to further enlarge the right of service upon foreign corporations is shown markedly in the case of *McSwain v. Adams Grain & Provision Co.*, 93 S. C., 103, 76 S. E., 117, Ann. Cas., 1914-D, 981. E. C. Chapman was a broker residing at Cross Hill. Chapman sold corn for the defendant corporation on a commission basis, and service was made upon him. The facts in the *McSwain case* are very similar to the facts here considered. Judge DeVore refused to set aside the service of the summons and complaint, and this was affirmed by the Supreme Court, Mr. Justice Hydrick speaking. The matter is fully considered in this opinion, and the tendency of the Court to broaden out the right of service is clearly demonstrated.

From an examination of all of the authorities, we arrive at the following conclusions:

(1) That up to 1889, service upon a foreign corporation had to be made upon a *"resident agent"* within the State.

(2) After 1889, the rule was that service could be made upon a foreign corporation by serving *"any agent."*

(3) That the Court has construed the term *"any agent"* broadly, and has not limited it to merely one who has the power to contract for the principal.

(4) That, where the cause of action arises in the State, any person acting for the corporation in any representative capacity is an agent to make service upon.

(5) A finding of fact by the Circuit Judge as to service will be sustained unless it is totally unsupported by the evidence.

There are two statements in the record which it is well to note in passing. In the statement which is agreed to by counsel for the appellant and counsel for the respondent as the case for appeal, the following appears:

(a) "It (Kingan & Company) maintains no offices or resident agents within the limits of the State of South Carolina."

(b) "His Honor, Judge Grimball, by order bearing date May 17, 1934, without deciding any question of law or fact held.  *  *  *"

When counsel enter into an agreed stipulation of fact as the basis for a decision by the Court, both sides will be bound by such agreed stipulation, and the Court will not go beyond such stipulation to determine the facts upon which the case is to be decided, but to hold that a statement made in a transcript of record which is not sustained by the record is conclusive would be illogical. Although the two above statements are made and counsel for the appellant argues very strenuously on them as grounds for reversal of the case, this Court has the right to and will look into the record and see if such facts are consistent with the record.

In allowing the statement with reference to the resident agent to go into the record, counsel for the respondent, no doubt, had in mind that there was no agent who maintained

an office within the State of South Carolina for the defendant corporation. He certainly did not mean thereby to say that Hirsch was not a resident of South Carolina, and, if Hirsch is an agent of the defendant corporation, he certainly is a resident agent, but in this case it is not necessary to determine whether Hirsch was a resident agent, for, if he was "any agent" of the defendant, the service would be good.

The second proposition contained in the statement as to the order of Judge Grimball cannot be sustained by the record. Judge Grimball passed an order, and in passing the order he had to pass upon questions certainly of fact and possibly of law. The effect of his order was to decide that the service was good; that he would not disturb the judgment, and created the necessity for the defendant to appeal to this Court. Had he merely passed a formal order stating that upon consideration of the matter the motion was refused, this would have as effectively decided all of the issues in the cause as if he had written a lengthy opinion.

The last case upon the question of service is that of *Dyar v. Georgia Power Co.*, 173 S. C., 527, 176 S. E., 711, filed October 4, 1934. This opinion was by Mr. Justice Bonham and concurred in by Mr. Justice Carter and Mr. Acting Associate Justice Cothran. There was a dissent by Mr. Justice Stabler, concurred in by Mr. Chief Justice Blease. The service in this case was attempted in a multiple manner. The complaint was sent to Mr. Shumate, vice-president of the company, who refused to accept service. It was also sent to Mr. Wright, secretary of the company, in Atlanta, Ga., who refused to accept service. Service was attempted by publication of the summons. Service was attempted upon W. C. Hughs, Esq., a practicing attorney in Oconee County, and lastly service was attempted upon one B. M. Hall, Jr., on the hypothesis that he was an agent of the corporation within the State of South Carolina.

Judge Ramage held the service good in a short formal order, and seems to have relied chiefly upon the service of

Hughs, the attorney. From the evidence in the case, Mr. Justice Bonham holds that Hughs was not such an attorney as service could be had upon in accordance with law. Hughs represented the defendant in some litigated cases, but had no power to accept service for the defendant, nor was he their general attorney so recognized.

In the matter of the service on Hall, it appeared that Hall was a member of the firm of B. M. Hall & Sons, engineers, of Atlanta, Ga., which was engaged under contract with the defendant to make some surveys with reference to lands, the subject of litigation in Oconee County. Hall was not in the employ of the defendant save and except on contract to do this particular work, and therefore it was concluded that Hall was not an agent of the corporation by the majority opinion.

A careful investigation of the decisions cited in both opinions of this last-cited case will prove enlightening on the question of service. With the various principles in mind above set forth, an investigation of the record here shows that there was evidence that Hirsch was a salesman for the defendant corporation. Orders were produced in the record on the stationery of Kingan & Co., designating him as such salesman. There is further evidence in the record that he canvassed the trade for the defendant, and although the goods were shipped to the customer with draft, orders, notify, bill of lading attached in many instances, yet Hirsch was the man who made the contact with the trade. There was evidence in the record that he drove an automobile which had the name of Kingan & Co. upon it, and that he had certain advertising matter which he distributed in behalf of the defendant. Kingan & Co. sold its products in South Carolina. It invited the people of South Carolina to purchase freely of its products as wholesome and fit for human consumption. It complied with the National Pure Food and Drug Act as amended (21 U. S. C. A., §§ 1-5, 7-15), as required by the Acts of Congress. It collected

money from the people of South Carolina for its products, and it would be rather an anomalous situation which would permit the defendant corporation to sell its goods to the people of this State, to collect money from them, and then, when the goods prove to be unfit for human consumption, to say to their customers: "This corporation is beyond the reach of the process of your Courts."

The position of the defendant, in any event, is rather tardy. At first, the reason for ignoring the complaint was that no products had been sold to the Great Atlantic & Pacific Tea Company in Georgetown, and the defendant sat supinely by and ignored the process of a South Carolina Court for almost a year. No effort was made by it to vacate the service until after judgment was rendered. The summons and complaint was ignored, and the defendant, feeling safe in the security of its foreign office, ignored the demands of the plaintiff for the righting of the alleged wrong done him. When the judgment was rendered, however, the defendant suddenly realized the position which it was in, and then makes determined efforts to set aside the service of the summons and complaint where it was alleged that a citizen of South Carolina had been wronged. Numerous affidavits were produced; no longer was the matter ignored, but the Circuit Judge said it was too late, as the judgment had been rendered. The Circuit Judge held that the service was good; there was ample evidence in the record to sustain such finding, and, under the decisions of our Court, this being a law case, the findings of the Circuit Judge with reference to matters of fact will not be disturbed, where there is evidence to sustain the same.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE BONHAM (concurring in result): I concur in the result of Mr. Acting Justice Graydon's opinion be-

cause there is evidence that Hirsch was the agent of appellant within the contemplation of the Code.